## GANDOLFO *v.* HARTMAN *et al.*

(*Circuit Court, S. D. California.* January 25, 1892.)

COVENANTS IN DEED—PUBLIC POLICY—SPECIFIC PERFORMANCE.

A covenant in a deed not to convey or lease land to a Chinaman is void, as contrary to the public policy of the government, in contravention of its treaty with China, and in violation of the fourteenth amendment of the constitution, and is not enforceable in equity.

In Equity.   Bill for an injunction.   Denied.
*Blackstock & Shepherd* and *Bicknell & Denis*, for complainant.
*J. Marion Brooks, J. Hamer,* and *E. S. Hall*, for defendants.

Ross, District Judge.   The amended bill in this case shows that on the 22d of March, 1886, one Steward, for a valuable consideration, conveyed to the complainant a portion of lot 2, block 47, fronting on East Main street in the town of San Buena Ventura, Ventura county, of this state, together with a perpetual right of way over an adjoining alley. The deed also contained the following:

"It is also understood and agreed by and between the parties hereto, their heirs and assigns, that the party of the first part shall never, without the consent of the party of the second part, his heirs or assigns, rent any of the buildings or ground owned by said party of the first part, and fronting on said East Main street, to a Chinaman or Chinamen.   This agreement shall only apply to that part of lot 2, block 47, aforesaid, lying north of the alley-way hereinbefore described, and fronting on said East Main street.   And said party of the second part agrees for himself and heirs that he will never rent any of the property hereby conveyed to a Chinaman or Chinamen."

The deed was duly recorded in the county in which the property is situate, and subsequently the portion of the lot retained by Steward was purchased of him by the defendant Hartman, who was thereafter about to lease it to the defendants Fong Yet and Sam Choy, who are Chinamen, when the present suit was commenced to enjoin him from so doing.

The federal courts have had frequent occasion to declare null and void hostile and discriminating state and municipal legislation aimed at Chinese residents of this country.   But it is urged on behalf of the complainant that, as the present does not present a case of legislation at all, it is not reached by the decisions referred to, and that it does not come within any of the inhibitions of the fourteenth amendment to the constitution of the United States, which, among other things, declares that no state shall "deny to any person the equal protection of the laws."   This inhibition upon the state, as said by Mr. Justice FIELD, in the case of *Ah Kow* v. *Nunan*, 5 Sawy. 552—

"Applies to all the instrumentalities and agencies employed in the administration of its government: to its executive, legislative and judicial departments; and to the subordinate legislative bodies of counties and cities.   And the equality of protection thus assured to every one whilst within the United States, from whatever country he may come, or of whatever race or color he

may be, implies that not only the courts of the country shall be open to him on the same terms as to all others for the security of his person or property, the prevention or redress of wrongs, and the enforcement of contracts, but that no charges or burdens shall be laid upon him which are not equally borne by others. * * *"

It would be a very narrow construction of the constitutional amendment in question and of the decisions based upon it, and a very restricted application of the broad principles upon which both the amendment and the decisions proceed, to hold that, while state and municipal legislatures are forbidden to discriminate against the Chinese in their legislation, a citizen of the state may lawfully do so by contract, which the courts may enforce. Such a view is, I think, entirely inadmissible. Any result inhibited by the constitution can no more be accomplished by contract of individual citizens than by legislation, and the courts should no more enforce the one than the other. This would seem to be very clear.

Moreover, it is by the treaty between the United States and China of November 17, 1880, provided that—

"Chinese subjects, whether proceeding to the United States as teachers, students, merchants, or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States, shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation." Article 2, Treaty Nov., 1880, (22 U. S. St. p. 13.)

"The intercourse of this country with foreign nations and its policy in regard to them," said the supreme court, speaking through Chief Justice TANEY, in *Kennett* v. *Chambers*, 14 How. 49, "are placed by the constitution of the United States in the hands of the government, and its decisions upon these subjects are obligatory upon every citizen of the Union. He is bound to be at war with the nation against which the war-making power has declared war, and equally bound to commit no act of hostility against a nation with which the government is in amity and friendship. This principle is universally acknowledged by the laws of nations. It lies at the foundation of all governments, as there could be no social order or peaceful relations between the citizens of different countries without it. It is, however, more emphatically true in relation to the citizens of the United States. For, as the sovereignty resides in the people, every citizen is a portion of it, and is himself personally bound by the laws which the representatives of the sovereignty may pass, or the treaties into which they may enter, within the scope of their delegated authority. And, when that authority has plighted its faith to another nation that there shall be peace and friendship between the citizens of the two countries, every citizen of the United States is equally and personally pledged. The compact is made by the department of the government upon which he himself has agreed to confer the power. It is his own personal compact as a portion of the sovereignty in whose behalf it is made. And he can do no act nor enter into any agreement to promote or encourage revolt or hostilities against the territories of a country with which our government is pledged by treaty to be at peace, without the breach of his duty as a citizen, and the breach of the faith pledged to the foreign nation. And, if he does so, he cannot claim the aid of a court of justice to enforce it. The appellants say, in their contract, that they were induced to advance the money

by the desire to promote the cause of freedom. But our own freedom cannot be preserved without obedience to our own laws, nor social order preserved if the judicial branch of the government countenanced and sustained contracts made in violation of the duties which the law imposes, or in contravention of the known and established policy of the political department, acting within the limit of its constitutional power."

This was said in a case where it was sought to enforce a contract made in this country after Texas declared itself independent, but before its independence had been acknowledged by the United States, whereby the complainants agreed to furnish, and under which they did furnish, money to a general in the Texan army, to enable him to raise and equip troops to be employed against Mexico. But the principle governing the case· is, in my opinion, equally applicable here, where it is sought to enforce an agreement made contrary to the public policy of the government, in contravention of one of its treaties, and in violation of a principle embodied in its constitution. Such a contract is absolutely void, and should not be enforced in any court,—certainly not in a court of equity of the United States.

For the reasons stated an order will be entered sustaining the demurrer, and dismissing the bill, as amended, at complainant's cost, without reference to other points made and argued by counsel.