PARMALEE *v.* MORRIS.

Covenants—Deeds—Restriction Against Colored People—Valid-
ity—Constitutional Law.

> A restriction applicable to all the lots in a subdivision
> that "Said lot shall not be occupied by a colored person,"
> *held*, not void as contravening the provisions of the 13th
> and 14th Amendments to the Constitution of the United
> States, or as contrary to public policy.

Appeal from Oakland; Gillespie (Glenn C.), J.
Submitted April 6, 1922.    (Docket No. 29.)    De-
cided June 5, 1922.    Rehearing denied November 2,
1922.

Bill by A. B. Parmalee and others against Charles
Morris to enjoin the violation of certain real estate
restrictions.    From a decree for plaintiffs, defendant
appeals.    Affirmed.

*Doty & Cram,* for plaintiffs.

*W. Hayes McKinney* (*Barnes & Stowers,* of coun-
sel), for defendant.

MOORE, J.    The chancellor who heard this case filed
a written opinion therein which so clearly states the
questions involved that we reproduce it here:

"At the time the Ferry Farm Addition to the city
of Pontiac was platted the lots were sold subject to
the following uniform restrictions:

" 'No building shall be built within twenty feet of the front
line of the lot.    Said lot shall not be occupied by a colored
person, nor for the purpose of doing a liquor business thereon.'

"Defendant Morris and Anna Morris, his wife, both
colored, have entered into a contract to purchase a lot

On validity and enforceability of contract or covenant in re-
lation to real property which discriminates against persons be-
cause of race, color or religion, see note in L. R. A. 1916B, 1208.

On provision in deed discriminating against persons on ac-
count of race, color, or religion, see note in 9 A. L. R. 120.

in the subdivision, and the bill of complaint was filed by plaintiffs, who are owners of lots on the same subdivision and residents of the neighborhood, to restrain defendants from violating the restriction by occupying the premises in question. The record presents the sole question as to whether or not the restriction against the occupancy of the premises by a colored person is void as contravening the provisions of the 13th and 14th Amendments to the Constitution of the United States, while plaintiffs insist that the provisions of the Federal Constitution have no application and that the restriction is a matter of a purely personal action of the owner of the premises and is valid and enforceable.

"Every owner of land in fee is invested with full right, power and authority, when he conveys a portion away, to impose such restrictions and limitations on its use as will in his judgment prevent the grantee, or those claiming under him, from making such use of the premises conveyed as will impair the use or diminish the value of the part which he retains. The only limitation on this right is the requirements that ᵗthe restrictions be reasonable; not contrary to public policy and not create an unlawful restraint on alienation. These rights have been repeatedly recognized by our Supreme Court, and in a recent case the following quotation from 7 R. C. L. p. 1114 is cited with approval:

"'A person owning a body of land, and selling a portion thereof, may, for the benefit of his remaining land, impose upon the land granted any restrictions not against public policy, that he sees fit, and a court of equity will generally enforce them.' *Davison* v. *Taylor*, 196 Mich. 605, 611.

"The reasons urged on behalf of defendants, why these general rules are not decisive of the issue, are:

"(1) Because the restriction contravenes rights granted to defendants by the 13th and 14th Amendments to the Constitution of the United States.

"(2) Because the restriction is contrary to public policy.

"These reasons will be discussed in their order.

"1. Since the days of the civil rights cases the law has been regarded as settled that the provisions of the 13th and 14th Amendments applied to legislative acts

of the State rather than the actions of individuals. In the *Civil Rights Cases,* 109 U. S. 3 (3 Sup. Ct. 18), the United States Supreme Court, in passing upon the scope of these amendments, said:

"'It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the amendment. It has a deeper and broader scope.'

"And again in *United States* v. *Cruikshank,* 92 U. S. 542, it is said:

"'The inhibition of the 14th Amendment applies exclusively to actions by the State, and has no reference to actions by individuals.'

"In an exhaustive opinion in *Plessy* v. *Ferguson,* 163 U. S. 537 (16 Sup. Ct. 1138), the court said:

"'The object of the Amendment (14th) was undoubtedly to enforce the absolute equality of the two races before the law, but in the nature of things it could not have been intended to abolish the distinctions based upon color, or to enforce social, as distinguished from political equality, or a commingling of the two races upon terms unsatisfactory to either. Laws permitting, and even requiring, their separation in places where they are liable to be brought into contact do not necessarily imply the inferiority of either race to the other, and have been generally, if not universally, recognized as within the competency of the State legislatures in the exercise of their police power.'

"It is interesting to note that in the foregoing case the Supreme Court of the United States sustained the validity of a statute of Louisiana providing for the separation of races in passenger cars as not being repugnant to the provisions of the 14th Amendment.

"It would seem settled by the foregoing decisions of the highest court of our land that the provisions of the 13th and 14th Amendments cannot be invoked in the present case. The issue presented arises out of individual rather than State action and is to be determined wholly as a domestic issue. The case of *Gandolfo* v. *Hartman,* 49 Fed. 181 (16 L. R. A. 277), cited by defendants, has but little bearing on the issues presented. In that case a covenant not to rent property to a Chinaman was held to be void and unenforceable. The effect of the 14th Amendment was

discussed by the court, but the case appears also to have turned upon the provisions of the treaty with China which guaranteed its citizens the equal protection of our laws.

"2. Is the restriction contrary to public policy?

"It has been said that certain acts are contrary to public policy so that the law will refuse to recognize them when they have a mischievous tendency so as to be injurious to the interests of the State. This brings up the question as to what interests of the State are likely to be injured if an owner of property, for reasons which are satisfactory to himself, refuses to sell himself, or permit his assignors to sell to certain persons who may be distasteful to him as neighbors. Are there any interests of the State which will be promoted or advanced compelling the creation of such a condition in the community? The law is powerless to eradicate racial instincts or to abolish distinctions which some citizens do draw on account of racial differences in relation to their matter of purely private concern. For the law to attempt to abolish these distinctions in the private dealings between individuals would only serve to accentuate the difficulties which the situation presents.

"The precise issues presented have been squarely before the courts of last resort of several States, and have been decided adversely to the contentions of defendants.

"In *Los Angeles Investment Co.* v. *Gary*, 181 Cal. 680 (186 Pac. 596, 9 A. L. R. 115), the court distinguished between a restriction against the sale and one against the occupancy of certain property by persons other than of the Caucasian race. The former was held invalid, as an unlawful restraint on alienation, while the latter was upheld.

"In *Koehler* v. *Rowland*, 275 Mo. 573 (205 S. W. 217, 9 A. L. R. 107), the supreme court of Missouri held that a condition in a deed against the transfer, lease or renting of the property in question to negroes was one which the vendor had a right to make and was not void on the ground of public policy. The same court in *Keltner* v. *Harris* (Mo.), 196 S. W. 1, also held that where an owner of real estate made a contract of sale of the same to a white man, and after making the deed discovered that it was made to a

colored man for whom the white man was merely an agent, that the conveyance would be voided on the ground of fraud, saying:

" 'If it was distasteful to plaintiff to have a colored man as his adjoining neighbor he had a legal right to refuse to sell to him or his agents the property in question. In other words, no man is bound to sell his property to a proposed purchaser whose presence is unsatisfactory to him as a neighbor, whether he be white, black or of some other color.'

"The same question was also before the supreme court of Louisiana in *Queensborough Land Co.* v. *Cazeaux,* 136 La. 724 (67 South. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248), where it was held that a condition in a deed that the grantee should not sell to a negro did not violate the provisions of the 14th Amendment and was not against public policy.

"One of the purposes of the restriction in the instant case was apparently to preserve the subdivision as a district unoccupied by negroes. Whether this action on the part of the owner was taken to make the neighborhood more desirable in his estimation or to promote the better welfare of himself and his grantees is a consideration which I do not believe enters into a decision of the case. So far as I am able to discover there is no policy of the State which this action contravenes. Were defendants' claim of rights based upon any action taken by the authority of the State an entirely different question would be presented.

"Defendant's motion to dismiss the bill of complaint will therefore be denied. The injunction heretofore issued is however broader than warranted by the provisions of the restriction. The restriction covers the occupancy of the property by a colored person only. In terms at least it would not be violated by leasing the same to a colored person so long as such person did not occupy it. The temporary injunction heretofore issued will therefore be modified to the extent of prohibiting defendant from occupying the premises himself, or from permitting the same to be occupied by a colored person, and as so modified, will be made permanent.

"GLENN C. GILLESPIE,

"Circuit Judge."

A decree was made in accordance with the opinion. The case is brought here for review by appeal.

Counsel urge the same defenses that were urged in the court below. The following cases are cited by counsel for the appellant: *Title Guarantee & Trust Co.* v. *Garrott,* 42 Cal. App. 152 (183 Pac. 470); *Buchanan* v. *Warley,* 245 U. S. 74 (38 Sup. Ct. 16); *Ferguson* v. *Gies,* 82 Mich. 358 (9 L. R. A. 589, 21 Am. St. Rep. 576); *Gandolfo* v. *Hartman,* 49 Fed. 181 (16 L. R. A. 277); *Windemere-Grand, etc., Protective Ass'n* v. *American State Bank,* 205 Mich. 539; 18 C. J. pages 397-399, and other authorities. Some of these authorities do not sustain the contention of counsel.

We quote 18 C. J. p. 397, as follows:

"While restrictions against the use of property held in fee are not favored, yet where the intention of the parties is clearly manifested in the creation of the restrictions, they will be enforced in equity. Any use in contravention of the terms and objects of such covenants will constitute a breach for which relief may be obtained. Covenants restraining the use of real property afford an instance of that class of cases in which equity will charge the conscience of a grantee of land with an agreement relating to the land, although the agreement neither creates an easement nor runs with the land. The jurisdiction is not confined to cases in which an action at law can be maintained, but such covenants, although not binding at law, may be enforced in equity provided the grantee has taken with notice of the covenants." Citing many cases in the notes.

In *Windemere-Grand, etc., Protective Ass'n* v. *American State Bank, supra,* it was held the restrictions would not be enforced in equity where the character of the locality had changed.

In *Ferguson* v. *Gies, supra,* this court gave effect to the plain provision of a statute. A reference to the

other cases will show them easily distinguishable from the instant case.

Counsel say in the brief:

"Under the theory of our American democracy and citizenship, negroes, or any other race or class, ought not now to be forced to stand and plead for right, justice and equity which ought to be the common heritage of all men by virtue of their citizenship and domicile within the jurisdiction of the United States. If the opinion of the learned trial judge is affirmed it will open a wedge to all kinds of discrimination, wrongs and injustice to a vast number of American citizens of African descent. Slavery was once defended by church and statesmen, but who today would want to be classified as an upholder of such a vile institution?

"Such a restriction as the one referred to, if upheld, would place the negro and people of other sects and creeds in the same category as slaughter houses, livery stables, tanneries, garages, etc., and brand them as a nuisance, loathsome and undesirable in neighborhoods. * * *

"Would the learned trial judge's decision stand the test of time? Will there always exist in this country conditions whereby judicial decision will band ten millions of people, as it affects the negro, three millions as it affects the Jew, and about thirty millions, as it affects the foreigner, and equally as many as it affects the Catholic, thus placing all of these classes in the list of undesirables? * * *

"We think the learned trial judge's decision in this case, if affirmed, would in a short period of time take the course of the *Dred Scott* decision written by Mr. Justice Taney."

We think the counsel has entirely misapprehended the issue involved. Suppose the situation was reversed, and some negro who had a tract of land platted it and stated in the recorded plat that no lot should be occupied by a Caucasian, and that the deeds that were afterwards executed contained a like restriction, would any one think that dire results to the white race would follow an enforcement of the restric-

tions?   In the instant case the plat of land containing the restriction was of record.   It was also a part of defendant's deed.   He knew or should have known all about it.   He did not have to buy the land and he should not have bought it unless willing to observe the restrictions it contained.

The issue involved in the instant case is a simple one, i. e., shall the law applicable to restrictions as to occupancy contained in deeds to real estate be enforced or shall one be absolved from the provisions of the law simply because he is a negro?   The question involved is purely a legal one and we think it was rightly solved by the chancellor under the decisions found in his opinion.

The decree is affirmed, with costs to the appellees.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.