SCHULTE *v.* STARKS.

1. COVENANTS—OCCUPANCY RESTRICTION—COLORED PERSONS.
   Restraint upon occupancy of lots of a subdivision by colored persons is valid and enforceable.

2. DEEDS—ALIENATION RESTRAINT—COLORED PERSONS.
   Restraint upon alienation of lots of a subdivision to colored persons is void.

3. COVENANTS—NOTICE OF RESTRICTION NOT OF RECORD MUST BE SHOWN.
   Where plaintiffs in a restriction case rely on a common plan which is not of record, they must show actual or constructive notice to the defendant.

---

[1]Deeds, 18 C. J. § 449 (Anno); [2]Id., 18 C. J. § 378; 9 A. L. R. 120; 38 A. L. R. 1185; 42 A. L. R. 1273; 8 R. C. L. 1114; 2 R. C. L. Supp. 724; 5 R. C. L. 495; 6 R. C. L. Supp. 724. [3]Id., 18 C. J. § 462 (Anno).

4. SAME—INJUNCTION—AMBIGUOUS RESTRICTION—NOTICE.

In a suit to restrain occupancy of a city lot by colored persons in violation of a common plan limiting occupancy of lots in the subdivision to persons of the Caucasian race, evidence, *held*, to establish that defendants purchased the lot with actual notice of said restriction, rendering it enforceable as to them, although the restriction of record otherwise is too indefinite and ambiguous to be enforceable.

5. EVIDENCE — DAMAGES—UNCONTRADICTED TESTIMONY TAKEN AS TRUE.

In a suit to restrain occupancy of a city lot by colored persons in violation of a restriction in force in the subdivision, where the only testimony on the subject is to the effect that such occupancy would materially diminish the value of neighboring property owned by plaintiffs, said testimony must be taken as true.

Appeal from Wayne; Carr (Leland W.), J., presiding.    Submitted January 7, 1927.    (Docket No. 45.)    Decided April 1, 1927.

Bill by Frank A. Schulte and others against William H. Starks and another to enjoin the violation of occupancy restrictions.    From a decree for plaintiffs, defendants appeal.    Affirmed.

*Lynch & Lovett*, for plaintiffs.

*Walter H. Stowers (James R. Neill*, of counsel), for defendants.

FELLOWS, J.    It is settled by former decisions of this court that a restraint upon occupancy of the lots of a subdivision by colored persons is valid and enforceable (*Parmalee* v. *Morris*, 218 Mich. 625 [38 A. L. R. 1180]), although a restraint upon alienation to a colored person is void (*Porter* v. *Barrett*, 233 Mich. 373).    The fact that defendants are colored persons

─────────────

⁴Deeds, 18 C. J. §§ 462 (Anno), 463, 458, 558 (Anno); Injunction, 32 C. J. §§ 315, 316, 319; ⁵Deeds, 18 C. J. § 558 (Anno); Evidence, 23 C. J. § 1791.

is established by their own admissions while on the witness stand and by the finding to that effect by the trial judge who saw them in court. The record does disclose, however, that Mrs. Starks is quite light colored, and she testified that many, many times she has been taken for a white woman. Mr. Starks is a parlor car conductor on the Pere Marquette. Defendants appear to be thrifty. They own a home on Beniteau street, where they have lived eight years, and they own other property which they rent. In the summer of 1925, defendants purchased a lot on Lakewood avenue in John A. Hager's Oneida Park subdivision adjoining that owned by the individual plaintiffs, the negotiations being conducted by Mrs. Starks. They paid $3,800 cash for it and took title to it. They erected a house on it at a cost of $14,000, which was also paid for in cash. The district is a high-class residential district, and the plaintiff association is made up of many of its residents. Upon learning that defendants were colored, the association wrote to them two letters, which do not appear in the record, but which evidently questions defendants' right to occupy the residence. These letters were not specifically replied to although defendants did offer to sell, fixing their price at $25,000. This bill was filed, the case advanced and heard, resulting in a decree restraining the occupancy of the house by defendants or others of the colored race.

The restrictions of record are indefinite and ambiguous. We quote them:

"The restrictions herein contained shall run and continue with the land; and it is agreed between the parties hereto that the said restrictions shall be contained in all other future conveyances of said land situated on said Lakewood boulevard in said subdivision. Further, that the granted premises shall not be sold, rented or leased to any person or class of persons whose ownership or occupancy would be injurious to the locality."

If we had before us only the restrictions of record there would be much force in the contention of defendants' counsel that they are too indefinite to be enforced, at least too indefinite to be enforced against these defendants. But the proof is overwhelming that from the inception of the subdivision to the present time there has been followed a consistent plan of exclusion of colored people from the occupancy of lots in the subdivision. Likewise, from the beginning to the present, those who put the subdivision on the market, their sales agents and employees, and the purchasers of the lots have consistently construed the restrictions to exclude colored people from occupancy of lots in the subdivision, and all purchasers of lots in the subdivision have been so advised, and the proof is conclusive that defendants are the first to attempt to so intrude. Mr. Hager, who subdivided the property, is now deceased, but his son-in-law, who was associated with him in the project, was called as a witness by plaintiffs. He prepared the restrictions after consulting numerous restrictions. He testifies that the object sought was the exclusion of colored people from the subdivision. He assisted in making some of the sales and he and the sales agent in charge of the subdivision both testify that such was the purpose of the restrictions and that all purchasers were so informed. A large number of purchasers and owners were called as witnesses and uniformly substantiated this claim. These purchasers have for many years so construed the language of the restrictions. We therefore have established by the overwhelming weight of the evidence a plan initiated with the platting of the subdivision and continued to the present time and likewise a consistent construction of the language of the restrictions by everyone connected with the property.

Upon the question of plan it was said by Mr. Justice

STEERE, speaking for the court in *Allen* v. *City of Detroit*, 167 Mich. 464 (36 L. R. A. [N. S.] 890), with the citation of numerous sustaining authorities:

"That a portion of the conveyances do not contain the restrictions will not defeat the same. Although some of the lots may have written restrictions imposed upon them and others not, if the general plan has been maintained from its inception, if it has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se.* It goes with the land, and is equally binding on all purchasers with notice."

In the recent case of *Signaigo* v. *Begun*, 234 Mich. 246, the restrictions were practically as indefinite as in the instant case, but this court found that a plan had been adopted at the beginning and consistently followed, of which plan defendant had both actual and constructive notice, and we awarded the plaintiff the relief asked. In *Killian* v. *Goodman*, 229 Mich. 393, it was said by Mr. Justice MCDONALD, speaking for the court:

"It is not necessary to quote further as to the construction placed upon the restrictions by all the parties. Other witnesses testify substantially to the same effect. It was generally understood that the building of two-family flats was not in violation of the restrictions. The binding effect of such a practical construction is recognized by this court in *James* v. *Irvine*, 141 Mich. 376.

"In this view of the evidence there has been no departure as to the two-family buildings from the restrictive covenants in the several conveyances as construed by the owner and his grantees. It matters not that the construction was erroneous. * * *

"As there was a general plan for the development of the property which was followed by the plaintiffs, they have a right to enforce the restrictions against another grantee of their common grantor. The defendant bought the lots on which he intends to erect a 33-family apartment house with full knowledge of all the facts. He is bound by the restriction in his conveyance as construed by the parties."

In *Oliver* v. *Williams*, 221 Mich. 471, the subdivider and purchasers had consistently construed the building line in the restriction to apply to the main bearing wall and not to preclude the erection of porches and steps within the restricted area. Defendant insisted that such erections were a violation of such restrictions and amounted to an abandonment of them. It was said by Mr. Justice WIEST, speaking for the court:

"Defendants knew, when they purchased their lots, of the building restriction thereon, and while they accepted the same, they evidently did so with the mental reservation that they would not abide thereby if they could avoid the obligation. It constitutes no hardship to defendants to hold them to the restriction, as construed by practical endeavor, but it would be an inequitable hardship to the owners of residences to permit defendants to wipe out all their efforts to make a fine street by permitting them to erect a store building to the street line at the corner. No one, apparently, before defendants appeared upon the scene, questioned the practical construction given the restriction, and it is too late now for defendants to successfully contend that such efforts to comply with the plan of restriction shall be swept aside because of a wrong idea of the strict letter thereof."

Where plaintiffs in a restriction case rely on a common plan which is not of record, they must show actual or constructive notice to the defendant. We are satisfied they have here shown actual notice. Defendants acting through Mrs. Starks purchased of one Mitchell. She testifies that she asked him what the restrictions meant. They are in conflict as to the information he gave her. He claims he told her the property must be sold to one of the Caucasian race; that he bought it with that understanding and gave her the same information, believing he was dealing with a white woman. This she denies. But he is entirely disinterested in the outcome of this case.

There is nothing inconsistent in his testimony, and the trial judge who heard and saw both witnesses believed him.    We are not inclined to do otherwise.

The testimony and the only testimony on the subject is to the effect that occupancy of the premises owned by defendants by themselves or others of the colored race would materially diminish the value of the neighboring property, particularly that owned by the individual plaintiffs, which cost them around $21,500. In the absence of any testimony of a contradictory character, this must be taken as true.

It follows from what has been said that the decree appealed from must be affirmed.    Plaintiffs will recover costs of this court.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and MCDONALD, JJ., concurred.