**GOSPEL SPREADING ASS'N, Inc., et al.
v. BENNETTS et al.**

**No. 8837.**

United States Court of Appeals
District of Columbia.

Argued Nov. 14, 1944.

Decided Jan. 29, 1945.

Messrs. James A. Cobb and George E. C. Hayes, both of Washington, D. C., for appellant Gospel Spreading Association, Inc.

Mr. Edmund D. Campbell, of Washington, D. C., for appellant Stone Construction Company, Inc.

Mr. Henry Gilligan, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

GRONER, C. J.

██ This is a companion case to Mays v. Burgess, — App.D.C. —, 147 F. 2d 869, No. 8831, decided today. This case involves the validity of a restrictive race covenant in a deed to real estate and in both the land is located in the same general neighborhood in Washington City. There is, however, a difference in the language of the covenants in the two cases. In No. 8831 the provision restricts both sale and occupancy. In the present case the language of the covenant is "that none of the herein described pieces and parcels of land, or any part thereof or any improvements thereon, shall ever be used or in any manner occupied by negroes or by any person or persons of the Negro race * * *." Presumably, this difference in the terms of the covenants was not brought to the attention of the trial court, with the result that the judgment entered enjoined appellant "from owning, using, occupying, selling, leasing, transferring, or conveying the land." Since the covenant proscribed neither owning, leasing nor conveying, it was, we think, error to have enjoined against a *sale* to a person of the colored race.[1] His right as purchaser to acquire it and thereafter to lease it, except to a colored person, was unrestricted.

But there is an even more striking difference in the facts of the two cases. In No. 8831 the property is located in a neighborhood which, as provided by the restrictive covenants covering the properties, has remained exclusively white, and for that reason it was inappropriate to apply the rule we followed in Hundley v. Gorewitz,[2] but this is not true of the instant case, and a fair consideration of all the circumstances with relation to the changed character of the neighborhood brings it, we think, within the doctrine of the Hundley case. In that case we said that where removals (of white persons) are caused by the constant penetration of colored persons into a white neighborhood, to enforce the restriction would be to create an unnatural barrier to civic development and to establish a virtually uninhabitable section of the city, and would depreciate rather than enhance the value of the property concerned. In this case there was shown an established colored penetration into numerous houses covered by the covenant which, as to the street on which the property is located, had transformed it into a definitely colored section. The trial court in the findings of fact said as to this:

"Lot 1, Square 3116, improved by premises 101 U Street, Northwest, has a frontage on First Street of 35 feet and a frontage on U Street together with the entrance, of 100 feet, extending to an alley, on which the property garage abuts. This alley is a continuation of an alley extending from Rhode Island Avenue north to Bryant Street, in the rear of all lots abutting on First Street for five city blocks. Four houses on the north side of U Street, west of said alley, and four houses on the south side of U Street, west of said alley, are also included in the territory covered by * * * the aforesaid covenant and have been occupied by Negroes for some time. All the rest of U Street, between First and Second Streets, N. W., on both sides of the street is owned and occupied by persons of the Negro race, and at the southeast corner of U and 2d Streets there is a Negro church."

██ The plain meaning of this is that U Street, on which this property fronts, is a wholly colored neighborhood, except for the lot immediately opposite, and likewise that the restrictive covenant, sought now to be invoked, was long ago abandoned as to all similarly restricted property on U Street, west of First Street, without complaint. In the light of these facts, it is obvious that the constant penetration by colored persons into this white neighborhood and the breach and abandonment of the covenant to the extent we have shown have resulted in its complete frustration, so that the result of enforcing it in this case would be to depreciate rather than to enhance the value of the property concerned. In such case we have said a court of equity ought not to interfere.

Reversed and remanded with instructions to proceed in accordance with this opinion.

Reversed and Remanded.

Judge EDGERTON concurs in the result.

[1] Parmalee v. Morris, 218 Mich. 625, 188 N.W. 330, 38 A.L.R. 1180.

[2] 77 U.S.App.D.C. 48, 132 F.2d 23.