**PERKINS, ET AL., Plaintiffs-Appellants and Appellees, v. MONROE AVENUE CHURCH OF CHRIST, Defendants-Appellees and Appellants.**
**CHURCH OF CHRIST, Defendants-Appellees and Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 3926 and No. 3934.   Decided October 30, 1946.

Davies & Davies, Columbus, for Plaintiffs-Appellants and Appellees.

Frank C. Shearer, Columbus, D. D. White, Columbus, for Defendants-Appellants and Appellees.

Milton L. Farber, Columbus, Stanley U. Robinson, Jr., Columbus, Arthur Garfield Hays, New York, N. Y., Osmond K. Fraenkel, New York, N. Y., John D. Connor, Columbus, Robert N. Gorman, Cincinnati, for American Civil Liberties Union, Amicus Curiae.

Edmund B. Paxton, Asst. Pros. Atty., Columbus, Amicus Curiae.

David Clayman, Columbus, for The Columbus Council for Democracy, Amicus Curiae.

Pretzman & Dillon, Columbus, for the Eastwood Civic Association, and three other like organizations, amicus curiae.

386

SHERICK, PUTNAM and MONTGOMERY, JJ., of the Fifth Appellate District sitting by designation.

## OPINION

By SHERICK, PJ.

The original action, and decree entered thereon, from which both plaintiffs and defendants, Church and its Trustees, appeal, was to enjoin the Church from selling or conveying the premises over which the controversy rages to any person other than a Caucasian, and to evict one Lloyd L. Dickerson, the negro pastor of this church, therefrom, and to forbid the future occupancy and use of the premises, now occupied as the church parsonage by any person other than a Caucasian.

It is at once apparent that plaintiff's complaint is two-fold: the first involves ownership and future sale; the second, present occupancy and future use. The suit is grounded and relief sought upon a certain restrictive covenant appearing in the church's chain of title. The trial Court concluded, that, that portion of the covenant dealing with sale and conveyance was against public policy and contrary to law and was therefore void and unenforceable and disallowed an injunction; but held that portion of the restrictive covenant, which dealt with occupancy and use, in accordance with law. It ordered eviction of Dickerson, and enjoined the church from the subsequent use and occupancy by any one other than a person of the Caucasian race.

The defendant, Church, answers the complaint, and sets up some seven defenses. It asks for no affirmative relief, but requests that plaintiffs' petition be dismissed. It is well to note at this point that plaintiffs do not plead that defendant, Church, contemplates or threatens a subsequent sale of the premises to any person other than a member of the Caucasian race. The ultimate facts as shown by the pleadings and evidence disclose the following:

In 1926 the owners of 29 lots on Ohio Avenue in Columbus,

Ohio, being all of the lots within certain bounds, mutually agreed upon a plan to restrict the sale, use and occupancy of their properties. They all quit-claimed their respective holdings to The Guarantee Title & Trust Company, which thereafter re-conveyed back to each owner his respective lot. Each of these deeds of re-conveyance was duly recorded. They all contain the following covenant:

"Said grantee, as a part of the consideration for this conveyance, and for the mutual benefit of all of the owners of the lots on the east and west sides of North Ohio Avenue, between the first alley south of East Broad Street and the first alley south of East Long Street, and of every other present and subsequent owner of a lot or lots in the territory above described for himself and his heirs, hereby covenants and agrees with the said grantor herein, its successors and assigns, that at no time prior to January 1, 1960, shall any lot or part of a lot, or interest in any of the premises located on Ohio Avenue, as aforesaid, be leased, rented, sold or conveyed to any person or persons of any race other than Caucasian, nor shall any such person or persons other than Caucasian be permitted to occupy the same during that period, except as a servant of the occupant of any of said premises.

"And it is expressly agreed that if said grantee, his heirs, executors, administrators or assigns, or anyone holding or claiming by, through or under any of them, shall violate this condition, then these presents and this conveyance shall become null and void, and all the right, title, interest and estate in said premises shall immediately revert to and be revested in the grantor hereof, its successors and assigns, and it shall be seized as of its former estate herein as if these presents had never been executed, and may immediatly re-enter, repossess and hold said premises as of a good estate in fee simple, and the grantor hereof hereby gives and grants to the present owners of any or all of the other lots in the location fronting on Ohio Avenue in the territory above described, their heirs, executors, administrators and assigns, on a violation of the condition or restriction aforesaid, the right by proper legal proceedings to enforce the above condition, restriction and reversion. And the grantee hereof, by accepting this deed agrees to and with any or all of the owners of the other lots or parcels fronting on Ohio Avenue in the territory above described, their heirs, administrators, executors and assigns, that they or anyone or more of them may enforce by proper legal proceedings the aforesaid condition, restrictions and reversion; and the above condition and restriction shall until January 1, 1960, be considered as running with the aforesaid real estate hereby

conveyed and shall be made a part of all deeds and conveyances, instruments, leases, transfers, assignments and agreements made by the said grantee, his heirs, executors, administrators or assigns, or any of them of said premises.

"This deed has been executed pursuant to a general plan for the establishment of a highly restricted neighborhood and for the improvement and betterment of all the lots hereinbefore described and the covenants in this deed are entered into as a part of a general plan for the benefit of each lot owner, therefore the grantor and grantee herein covenant, with all deeds, conveyances and contracts of sale for said lots shall recite the conditions and restrictions herein contained."

. On or about June 29, 1945, Lot No. 6, having thereon a single residence, was owned and conveyed by Amelia Cipriano to Constance Connors, who on the same day conveyed it to a Realty Company, which in turn conveyed it to the defendant, Church, an Ohio corporation not for profit. The Church congregation is largely made up but not entirely so of colored people. Dickerson took part in the purchase negotiations. He knew of the deed restrictions. The Church and its negotiating agents had at least constructive notice thereof from the recorded deeds in its chain of title.

First, we shall consider the claim of plaintiffs-appellants in that the trial court erred in holding that plaintiffs were not entitled to an injunction restraining the Church from selling and conveying lot No. 6 to any person other than a Caucasian. It is the judgment of this Court that the trial court did err in passing upon this question, and in its failure to dismiss this branch of plaintiffs' case in accordance with the prayer of defendants' answer, for the reason that a declaratory judgment was not asked for, and under the state of the pleadings and the proof, the question was not made. As previously pointed out there was no threatened sale in the offing, contra to the restrictive covenant; and for the further reason that defendants' uncontroverted fourth defense was a complete and sufficient answer to plaintiffs' claimed impropriety of defendants' purchase and ownership of Lot No. 6. The fourth defense reads:

"Defendants further answering say that the corporation, defendants herein, has no racial identity because the corporation is an entity separate and apart from the members thereof."

Whether a corporation for profit or not for profit be the

creature of fact or fiction, it is as said in Fletcher's Cyclopedia Corporations, Per. Ed. Vol. 1, Section 25 at Page 84, that,

"Artificial personality is a corporate attribute * * *. It is generally accepted that the corporation is an entity distinct from the shareholders or members and with rights and liabilities not the same as theirs individually and severally * * * ."

This authority further states, Vol. 1, Sec. 28, Page 105, that "its members, as natural persons are merged in the corporate identity." In Sec. 31, Page 111, it is further observed, that "the property of a corporation is its property and not that of the stockholders, as owners," even though such stockholders or members may have some equities in it.

The high court of this state has again recently said, in **Voeller v Warehouse Company, 136 Oh St 427, 432,** that:

"A stockholder and a corporation of which he is a member, are separate and distinct persons in law, and their interests are always distinct and sometimes adverse."

Stockholders and members of most corporations are constantly changing. The entrance and exit of new and old members of stockholders in no wise affect the title or ownership of corporate property. It ought to be clear that a corporation as a legal entity can have no racial identity. The defendant, Church, has a mixed congregation. It was not a non-Caucasian or a negro, within contemplation of law. Nowhere within the restriction covenant do we find that it contemplated non-sale of restricted property to a corporation composed in whole or in part of non-Caucasian stockholders or members. We believe it well settled that it is not the policy of either courts of law or equity to enlarge restrictive covenants to embrace matters therein which are not specifically contemplated or clearly stated. We do not perceive wherein Realty Company or defendant, Church, violated any provision of the restriction covenant. Neither do we find any fact that should cause a court of equity to disregard the theory of separate entity.

The case of Peoples Pleasure Park Company v Rohleder, 109 Va. 429; 61 S. E. 794, is directly in point. The Park Company was a corporation organized and controlled by negroes for the purpose of operating a place of amusement for colored people. It purchased a tract of ground which bore a restriction that it could not be sold to colored persons. In an action to enforce the covenant the Court held that,

"A restriction in the covenants of land to the effect that the title of this land is never to vest in a person or persons of African descent or colored persons is not violated by a subsequent conveyance of land to a corporation organized to establish or develop a pleasure park for the amusement of colored people. The contemplated use is not prohibited by the restriction nor is the title conveyed to a forbidden person."

The English case of Continental Tyre and Rubber Company, Limited, v Daimler Company, Limited, King's Bench, 1915, Vol. 1, page 893, is of passing interest. Plaintiff company was incorporated in England and carried on business in London. It was subsidiary to a German corporation. All its shares, save one, were held by German subjects residing in Germany. It was held that war did not change its character, even if all its shareholders were nonresident alien enemies; that having been created in accordance with law, it remained an English corporation. We cite this case to show to what length English courts have gone even in times of war to hold that "a stockholder and a corporation of which he is a member, are separate and distinct persons in law" as was held in Voeller v Warehouse Company, supra.

We now come to that feature of the suit of which defendants-appellants complain in their appeal. Is the covenant against use and occupancy by non-Caucasians invalid, either in that it is contrary to law, antagonistic to Federal or State constitutional provisions, or repugnant to public policy?

This State has long held to the rule, as in **Anderson y Cary, 36 Oh St 506,** that a restriction against alienation, even for a limited time, is void as repugnant to the grant and contrary to public policy. This case concerns a limitation found in a devise of property. The principle is the same as that found in the leading case of Mandlebaum v McDonnell, 29 Mich., 78; Am. Rep. 61, wherein that illustrious Court of the three C's, Cooley, Campbell and Christiancy held, that restrictions upon alienation based upon racial characteristics, for any length of time, are void, principally for the reasons that they are repugnant to law and settled public policy. Other jurisdictions hold that a certain limitation in point of time cures the evils thereof. These remarks, of course, pertain to alienation and not to user, between which there is a marked distinction. One may own property and convey it away, yet he or his grantee may be limited in its use. It may be that liquor is forbidden to be sold on the premises, or that the structure placed thereon shall not be of a lesser value than a specified

sum; or that any such building thereon shall not be closer than so many feet from the lot or street line, or that improvements shall not be of a certain character. All such restrictive covenants are matters of individual contract, which the parties have carried into their conveyancing, prompted of course by financial caution or social security as they see it. Many such instances are found in reported Ohio cases, and the courts have consistently held such restrictions to be valid; recognizing the principle that even if one does own property, he may not put it to any selected use that may suit his fancy to the detriment of his neighbor with whom he or his predecessors in title have contracted otherwise. Although our highest court has never passed on the question of racial occupancy restriction, it is a matter of common knowledge that it is a frequent and extensive practice throughout the State.

Ohio. has no statute on the subject. The Court in **State, ex rel. v Trustees, 126 Oh St 290,** voiced what ought to be a self-evident truth, that:

"The purely social relations of our citizens cannot be enforced by law; nor were they intended to be regulated by our own laws or by the State and Federal Constitutions."

The distinction must not be lost sight of between those rights and duties that exist by virtue of private contract, from those which grow out of specific statutory recognition of public relationship. Examples of the latter are found in laws requiring innkeepers and restaurant proprietors to accommodate the public irrespective of race or color. See **Sections 12940 and 12941.**

Comparisons are odious; none are intended. Only for the purpose of developing that which is glaringly obvious, we inquire: Would anyone gainsay that one allotting and selling property for strictly residential purposes might not legally write into conveyances for the benefit of the purchaser and their assigns, a restrictive covenant against letting a property therein to be occupied and used as a house of prostitution? The absurdity of an affirmative answer, negates the question. Yet even prostitutes are a class of our citizenry. If one class may by contract be denied the privilege of use and occupancy, why not another? White may exclude black. Black may exclude white.

It is written in 14 Amer. Jur., 168, Sec. 208, that,

"All courts agree that a condition or covenant that prop-

erty shall not be occupied by persons of certain races is not invalid as a restraint upon the alienation of the property * * * ."

Even Michigan, which pioneered, in Mandlebaum v McDonnell, supra, holds in Schulte v Starks, 238 Mich., 102, 213 N. W. 102, that although a restrictive covenant against alienation to a person of color is void, a restraint upon use and occupancy by a colored person is valid and enforceable. In the earlier case of Parmalee v Morris, 218 Mich., 625; 188 N. W., 330, 331, 38 A. L. R., 1180, the Court said:

"The law is powerless to eradicate instincts or to abolish distinctions which some citizens do draw on account of racial differences in relation to their matter of purely private concern. For the law to attempt to abolish these distinctions in the private dealings between individuals would only serve to accentuate the difficulties which the situation presents."

To the same effect, see Ridgway v Cockburn, 196 N. Y. S., 936; 163 Misc. 511, wherein it is said in the 9th syllabus, that,

"It is not contrary to public policy for any group of individuals to contract among themselves for the exclusive enjoyment of their own private property."

The Ohio Supreme Court in **Railway Company v Cox, 55 Oh St 497, 515,** has taken a like stand. It says, that,

"The liberty of contract, being one of those rights secured by our constitution, is not to be restrained upon any insufficient or mere fanciful conceit of what may possibly happen. The citizen who is sui juris has a right to make a contract beneficial to himself when neither immoral, fraudulent nor illegal, and he should not be restrained in the exercise of such right unless the public welfare clearly compels it."

We well recognize that vociferous minorities of our citizens, instigated by politicians, not statesmen, clamor for judicial denial of private rights under the guise of public welfare which is to say public policy; but the courts ought to be and are ever mindful of that basic thought which underlies representative democracy, "give all power to the many and they will oppress the few, give all power to the few and they will

oppress the many, so that each should retain within themselves the power for their own self-preservation." And that reservoir of protection is to be found in our guaranty of constitutional rights, per example, the right to private contract; and the hesitancy of the courts to be swayed by that which is seemingly popular for the moment, but finds little or no sound reason or precedent, either in law or equity.

Without gathering all the cases supporting the holdings of the Supreme Court of Michigan in the last two cases cited, we would direct attention to some few authorities:

White v White, 108 W. Va., 125; 150 S. E. 531; 66 A. L. R., 518; Wayt v Patee, 205 Cal., 46; 269 Pac. 660; Los Angeles Investment Co. v Gary, 181 Cal., 680; 9 A. L. R. 115; 186 Pac. 596; Meade v Dennistone, (Court of Appeals, 1-11-38), Maryland; 196 Atl. 330; 114 A. L. R., 1227.

Defendants-Appellants urge that the restriction against use and occupancy violates the 14th Amendment of the Federal Constitution, and **Article I, Section 1,** of the **State Constitution.** Corrigan v Buckley, 271 U. S., 323, 330; 70 L. Ed., 969, 972, ought to and does dispose of this oft asserted and indefensible claim. Syllabus 4 of this authority unequivocally announces, .

"* * * the prohibitions of the Fourteenth Amendment have reference to state action exclusively, and not to any action of private individuals. * * * Individual invasions of individual rights is not the subject matter of the Amendment.".

**Article I, Section 1** of the **State Constitution** encompasses the right of private contract. A holding to the contrary would in fact place it in direct conflict with the Federal guaranty of the right of private contract. ·

We are told that plaintiffs failed to prove the existence of a contract supported by a consideration; that privity is lacking; that conditions have changed; that the contract is vague and uncertain; and that there was a failure to plead or prove damages. Numerous well reasoned authorities may be found denying the efficacy of such arguments and claims, all of which we find futile and of no avail.

Although defendants-appellants appeal on questions of law and fact, their appeal has been treated, argued and presented as one at law. We shall so consider it. The judgment of the trial Court on the question made by plaintiffs' appeal, that is, on sale restriction, is reversed. We enter the judgment that the trial Court should have entered, that is, dismissal of this portion of plaintiffs' complaint. The judgment of the trial Court entered on defendants' appeal, that is, as to use and

occupancy, is affirmed. If defendants would have it otherwise, the same judgment may be entered as was done in the trial court. Judgment accordingly. Costs are assessed against each appellant in their respective appeals.

PUTNAM and MONTGOMERY, JJ, concur.

APPLICATION FOR REHEARING

Decided November 21, 1946.

OPINION

By THE COURT:
Application for rehearing denied.

SHERICK, PJ, PUTNAM and MONTGOMERY, JJ, of the Fifth District, sitting by designation, concur.