NORTHWEST CIVIC ASSOCIATION *v.* SHELDON.

1. Covenants—Restrictions as to Use or Occupancy by Caucasions Only—Evidence.

In suit to enjoin use of subdivision lot by non-Caucasians evidence supported allegations that subdivision was planned as an exclusively white residential district and that deeds to all but a few of the lots contained a restriction against use or occupancy by others than Caucasians and that, without exception, no persons had theretofore occupied any lot therein except Caucasians.

2. Constitutional Law—Construction of Due Process Clauses.

Notwithstanding the difference in diction of the so-called due process clauses of the State and Federal Constitutions, they are to the same effect when considered in connection with a suit to enjoin use or occupancy of a lot in a subdivision restricted against non-Caucasians (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16).

3. Covenants—Restriction Against Use or Occupancy by Non-Caucasians—Public Policy—Constitutional Law.

A restriction against use or occupancy of lots in a subdivision by non-Caucasians is not void as contrary to public policy or the 13th and 14th Amendments to the Constitution of the United States or the due process clause of the Constitution of Michigan (U. S. Const. ams. 13, 14; Mich. Const. 1908, art. 2, § 16).

4. Deeds—Partial Restrictions.

Although some lots may have written restrictions imposed upon them and some have none, if the general plan has been maintained from its inception and has been understood, accepted and relied upon by all in interest, it is binding and enforceable on all *inter se* and runs with the land, binding all purchasers equally.

Effect of public policy upon validity of covenant restricting use of land, see 4 Restatement, Property, § 437.

5. Covenants—General Plan—Reciprocal Negative Easement.

In subdivision containing 338 lots in the title to 310 of which a restriction against use and occupancy by non-Caucasians appears as of record, where a general plan of occupancy solely by Caucasians has been adopted and carefully observed, the fact that such restriction was not of record in title of lot purchased by defendant, a Negro, would not preclude establishment and enforcement of the reciprocal negative easement against him where his wife and her parents who appeared to be of the Caucasian race were advised of the restriction and general plan before purchasing the lot.

6. Corporations—Property—Powers.

A corporate owner of real estate, acting within its express or implied powers, insofar as the imposition of restrictions upon the use or occupancy of real estate is concerned, possesses the same rights in its property as an individual owner would have therein.

7. Covenants—Imposition of Restrictions.

An individual owner of real estate has the right to impose restrictions on the use and occupation of his lands by subsequent owners thereof to Caucasians only.

8. Corporations—Auxiliary Powers.

Corporations may transact all such matters as, being auxiliary to their primary business, are transacted by ordinary individuals under similar circumstances.

9. Same—Powers—Ultra Vires.

Whatever may fairly be regarded as incidental to, and consequential on, those things which are authorized by the charter of a corporation will not be held by judicial construction to be *ultra vires,* unless expressly prohibited.

10. Injunction—Modification on Appeal.

Decree enjoining defendant Negro from entering upon, using or occupying premises restricted to use and occupancy by Caucasians was broader than the restriction, hence is modified to lift injunction against him as to "entering upon" the premises.

11. Appeal and Error—Covenants—Jurisdiction after Determination of Appeal.

Where 90-day period, provided in decree of circuit court within which defendant Negro was required to vacate premises, restricted to use and occupancy to Caucasians, has expired

> while case was being decided on appeal, the time within which he must vacate is extended 90 days from entry of decree in Supreme Court, jurisdiction being vested in circuit court to hear and determine future proceedings.

Appeal from Wayne; Webster (Arthur A.), J. Submitted January 8, 1947. (Docket No. 39, Calendar No. 43,492.) Decided April 17, 1947. Rehearing denied June 27, 1947.

Bill by Northwest Civic Association, a Michigan corporation, and others against Otis E. Sheldon and others for injunction to restrain use of property by persons other than of the Caucasian race. Decree for plaintiffs. Defendants appeal. Affirmed.

*Younglove & Chockley,* for plaintiff.

*Willis M. Graves* and *Francis M. Dent,* for defendants.

*Amici Curiae:*

National Association for the Advancement of Colored People by *Thurgood Marshall, Robert L. Carter, Marian Wynn Perry,* and *Edward M. Turner* (*Spottswood W. Robinson, III,* of counsel).

Detroit Chapter, National Lawyers Guild by *Henry S. Sweeney,* President, and *Ernest Goodman.*

National Bar Association by *Earl B. Dickerson, Loring B. Moore* and *Richard E. Westbrooks* (*George N. Leighton,* of counsel).

International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO), by *Maurice Sugar* and *Morton A. Eden.*

NORTH, J.  Defendants have appealed from a decree in the circuit court in chancery of Wayne county whereby the defendant Otis E. Sheldon, a colored man, was restrained and enjoined "from entering upon, using or occupying" lot No. 30 of Security Land Company's Subdivision in the city of Detroit, which property is commonly known as 5325 Seebaldt avenue; the decree further provided that within 90 days from the date thereof said Otis E. Sheldon should "move from said property."

Four owners and occupants of home properties in this subdivision are joined as plaintiffs with the Northwest Civic Association, a Michigan nonprofit corporation whose members are property owners in the Security Land Company's Subdivision and in neighboring subdivisions and are organized for the purpose, among others, of enforcing real estate restrictions in those subdivisions.  The bill of complaint alleges:

"4.  That said Security Land Company's subdivision was originally planned as a residential district, to be used and occupied exclusively by persons of the white or Caucasian race, and that Security Land Company, the owner, developed said subdivision under a general plan or scheme that it should be and always continue as an exclusively white residential district, and sold said lots on the representation and promise that the subdivision was restricted to those of the Caucasian race.

"5.  That in fulfillment of its said promises and pursuant to its general plan, the Security Land Company provided in the deeds to all lots in said subdivision, excepting a very few omitted by inadvertance, a restriction as follows:

" 'Said premises shall not be sold nor leased to nor occupied by any person other than one of the Caucasian race.'

"6.  That in pursuance of said general plan, all owners of lots in said subdivision, since its platting

in 1913, have recognized and complied with said restriction and plaintiffs allege on information and belief that no person except those of the white or Caucasian race now occupies or has ever occupied any lot in said Security Land Company's subdivision.''

The testimony taken, fairly supports the above quoted allegations in the bill of complaint. However, the following should be noted. The subdivision involved is composed of 338 lots. The restriction as to the use and occupation of the property in the subdivision being reserved exclusively to persons of the white or Caucasian race appears in the chain of title of 310 of the 338 lots. Defendants Sheldon purchased on a land contract and became occupants of lot No. 30 of the subdivision in 1945. The lot purchased by them is one of the few above noted in which the restriction here in issue does not appear in the chain of title. However, the undisputed testimony is that without any exception the use and occupancy of each and all the lots in this subdivision have been uniformly confined to persons of the white or Caucasian race.

The property in suit is occupied by defendants Otis E. Sheldon, his wife, Louise Sheldon, and her father and mother. None of these defendants were witnesses at the hearing of the case; but so far as is disclosed by the testimony Otis E. Sheldon is the only one of defendants who is not of the white or Caucasian race. He at no time appeared or took part in the negotiations for the purchase of lot No. 30 by defendants Sheldon. Instead the wife, Louise Sheldon, and her parents, all of whom appear to be of the Caucasian race, carried on the negotiations and consummated the transactions with the real estate agent who had the sale of the property in charge. He testified that he never saw or talked

with defendant Otis E. Sheldon, but that Mrs. Sheldon and her parents told him that: "He (Otis E. Sheldon) was always very busy on an important war job with an ordnance factory, and could not take time off." He further gave the following testimony:

"*Q.* Did you discuss with Mrs. Sheldon and with the Wests these restrictions?
"*A.* Yes.
"*Q.* And what did you tell them regarding the restrictions?
"*A.* Well, that is one of our sales points. When we take somebody in that neighborhood to show them property, we always point out that it is a highly restricted neighborhood for the Caucasian race only and that is what I told Mrs. Sheldon and Mr. West when I took them out.
"*Q.* That was before they purchased the property?
"*A.* That is right. To my knowledge there has never been any other Negro families in the Security Land Company subdivision. It has always been an entirely white subdivision."

Shortly after the purchase and occupancy of this property by the Sheldons and Wests other property owners in the subdivision discovered that Otis E. Sheldon was a colored man, and this suit was promptly commenced.

The record is contrary to appellants' contention (1) that plaintiffs did not establish as to this subdivision the doctrine of reciprocal negative easement had been applied or enforced by which those who were not of the white or Caucasian race were excluded, and (2) that there was no competent testimony in support of the trial court's finding that Otis E. Sheldon was not of the Caucasian race. Those facts were established. In the main appel-

lants' contention is that the decree in the circuit court granting the relief sought by plaintiffs is contrary to public policy and is in violation of article 2, § 16 of the Michigan Constitution and the 14th amendment to the United States Constitution. While these two constitutional provisions differ somewhat in diction, as considered in connection with the instant suit, they are to the same effect.*

Defendants' contention in the above respects is contrary to the former decisions of this Court and also to decisions in the United States Supreme Court. *Parmalee* v. *Morris,* 218 Mich. 625 (38 A. L. R. 1180), in substance held that a restriction applicable to all lots in a subdivision whereby it was provided ''Said lot shall not be occupied by a colored person'' is not void as contravening the provisions of the 13th or 14th amendments to the United States Constitution, and further that such a provision was not contrary to public policy. The decision in the *Parmalee Case* was cited and followed in *Schulte* v. *Starks,* 238 Mich. 102, which held (syllabus) ''Restraint upon occupancy of lots of a subdivision by colored persons is valid and enforceable.'' The phase of the instant case now under consideration is adequately covered by our recent decision in *Sipes* v. *McGhee,* 316 Mich. 614,† and our holding therein was adverse to the contention of appellants in the instant case. In the *McGhee Case* we held a like restriction valid and said (p. 625): ·

---

* Mich. Const. 1908, art. 2, § 16: ''No person shall be compelled in any criminal case to be a witness against himself, nor deprived of life, liberty or property, without due process of law.''

U. S. Const. am. 14, § 1 (so far as pertinent to the instant case): ''No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.''

† The case of *Sipes* v. *McGhee* was reversed by the Supreme Court of the United States on May 3, 1948, 334 U. S. 1 (68 Sup. Ct. 836, 92 L. Ed. —).—REPORTER.

"It is also the public policy of this State, as expressed in decisions of this Court too numerous to mention, to permit and enforce certain restrictions upon the use and occupancy of real property. See authorities listed in 3 Callaghan's Michigan Digest, pp. 371–403."

The Supreme Court of the United States has held that an agreement or contract between private parties that specified property shall not "be used or occupied by" persons of the Negro race is not "contrary to and forbidden" by the 5th, 13th or 14th amendments to the Federal Constitution. The Court said: "This contention (to the contrary) is entirely lacking in substance or color of merit." See *Corrigan* v. *Buckley,* 271 U. S. 323 (46 Sup. Ct. 521, 70 L. Ed. 969).

But in the instant case appellants stress the fact that the restriction upon which plaintiffs rely does not appear in the chain of title to lot No. 30 which was purchased by defendants Sheldon. Even so, appellants cannot profit by that fact, especially in view of the above noted circumstances under which the Sheldons purchased lot No. 30. It is established by the testimony that prior to their purchase they were informed of the restriction upon which plaintiffs now rely; and it is difficult to avoid the conclusion that notwithstanding such information defendants rather surreptitiously accomplished the consummation of the purchase. In *Allen* v. *City of Detroit,* 167 Mich. 464 (36 L. R. A. [N. S.] 890), notwithstanding the restriction therein sought to be enforced was not contained in the conveyances of every parcel of land in the restricted territory, we, citing numerous authorities, said:

"That a portion of the conveyances do not contain the restrictions will not defeat the same. Although some of the lots may have written restrictions imposed upon them and others not, if the gen-

eral plan has been maintained from its inception, if it has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se*. It goes with the land, and is equally binding on all purchasers with notice."

In *Schulte* v. *Starks, supra,* which involved the right of occupancy by persons of the colored race, we said:

"But the proof is overwhelmingly that from the inception of the subdivision to the present time there has been followed a consistent plan of exclusion of colored people from the occupancy of lots in the subdivision. Likewise, from the beginning to the present, those who put the subdivision on the market, their sales agents and employees, and the purchasers of the lots have consistently construed the restrictions to exclude colored people from occupancy of lots in the subdivision, and all purchasers of lots in the subdivision have been so advised, and the proof is conclusive that defendants are the first to attempt to so intrude."

While not literally applicable in every respect to the instant case, in general the purport of the quotation from the *Schulte Case* is applicable to the instant case.

n their brief appellants state: "It is the contention of the defendants and appellants that a corporation is created by the State and that it has no powers or privileges except those granted to it by the State." And in consequence thereof appellants assert that a corporation in subdividing real estate owned by it is without power to impose upon the land and its subsequent owners a restriction of the type involved in the instant suit. This contention is not tenable for the reason that a corporate owner of real estate acting within its express or implied powers, in so far as the issues in the instant case are concerned, possesses the same rights in its property

as an individual owner would have therein; and in numerous decisions in this jurisdiction it has been held that an individual owner of real estate has the right to impose restrictions on the use and occupation of his lands by subsequent owners thereof in the manner of the restriction upon which plaintiffs in the instant case rely.

In *Eureka Iron & Steel Works* v. *Bresnahan,* 60 Mich. 332, this Court quoted with approval the following: " 'Corporations may transact all such matters as, being auxiliary to their primary business, are transacted by ordinary individuals under similar circumstances.' "

Also in *Cicotte* v. *Corporation of the Catholic, Apostolic and Roman Church of St. Anne,* 60 Mich. 552, we said:

"It is well settled that corporations, whatever may be their character, are placed upon the same footing in regard to their contracts, and the implications upon which they may be based, as natural persons."

In substance to the same effect is the following:

"In addition  *  *  *  it is a well-settled principle that corporations, in the absence of express restrictions, have the implied power to do all acts that may be necessary to enable them to exercise the powers expressly conferred, and accomplish the objects for which they were created.   These powers are sometimes called 'incidental' powers and sometimes 'implied' powers, but in this connection the terms are used indifferently as meaning the same thing.   The meaning is that whatever may fairly be regarded as incidental to, and consequential on, those things which are authorized by the charter of a corporation will not be held by judicial construction to be *ultra vires,* unless expressly prohibited."   19 C. J. S. p. 373.

Because we are of the opinion that the decree entered in the circuit court is somewhat broader in its terms than the restriction upon which plaintiffs rely, the decree should be modified in the following particular. The provision therein "that thereafter defendant, Otis E. Sheldon, be and he is hereby restrained and enjoined from *entering upon,* using or occupying said premises" will be changed by deleting the italicized words in consequence of which the quoted portion of the decree as modified will read, "that thereafter defendant, Otis E. Sheldon, be and he is hereby restrained and enjoined from using or occupying said premises." Further, the decree will be modified by extending the time within which defendant, Otis E. Sheldon, shall vacate the premises for a period of 90 days from and after the entering of the decree in this Court.

A modified decree will be entered in this Court in accordance with the foregoing and the case will be remanded to the circuit court in chancery of Wayne County with jurisdiction to hear and determine any further proceedings in this cause. Appellees may have costs of this Court.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.