MRS. E. ORAH WEISS, CHARLES L. ARBOGAST and NADINE ARBOGAST, ALBERT J. DAVIS and MARY DAVIS, JAMES M. COTTINGHAM and NELLE COTTINGHAM, MRS. J. M. MARTIN, F. G. CHAPMAN and MARIE ALICE CHAPMAN, HAWLEY R. BROWN and EDNA M. BROWN, RAY KENYON and OLEA T. KENYON, Appellants, v. JAMES A. LEAON and ERMA LEAON, ET AL., Respondents, No. 41134—225 S. W. (2d) 127.

Division One, December 12, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, December 30, 1949.

*Roy K. Dietrich, Edwin Earnshaw* and *Dietrich, Tyler & Davis* for appellants.

*Lee E. Cisel, Roscoe C. Van Valkenburgh, Carl R. Johnson, Harry A. Hall, Hammond C. Woods,* and *Cliff Bailey* for respondents; *Cisel, Benton & McLaughlin* and *Miller, Sheffrey, Van Valkenburgh & Ryder* of counsel.

1056

 PER CURIAM:—This is an action to enforce a racial restriction agreement or, in the alternative, for damages for breach of such agreement. Under the decision of the Supreme Court of the United States in Shelley v. Kraemer, 334 U. S. 1, 92 L. Ed. 845, 68 S. Ct. 836, 3 ALR (2d) 441, holding that judicial enforcement of such an agreement violates the Fourteenth Amendment, the trial court dismissed the entire action. Racial restriction agreements may no longer be judicially enforced under Shelley v. Kraemer, and the judgment of the trial court dismissing that part of the action was proper.

The only issue before this court now for determination is whether the decision in Shelley v. Kraemer also forecloses a suit for the breach of a racial restriction agreement between parties under such an agreement. We find that Shelley v. Kraemer has not ruled on this issue.

The facts of the case are these. Plaintiffs are white persons who own lots in Santa Fe Place in Kansas City. Defendants Leaon, also white persons, are the owners of a lot at 2630 East 29th Street in Santa Fe Place. Defendants Leaon sold or were about to sell their lot to defendants Street, persons of the negro race. The lots in Santa Fe Place are subject to a private restriction agreement to run thirty years from February 5, 1931 which provides that none of the lots may be devised, sold, leased or occupied by negroes. Plaintiffs and defendants Leaon are parties under the agreement either as original makers or as their successors in interest.

In their original petition plaintiffs sought to enforce the restriction agreement through a decree cancelling any deed which may have been made to the negro defendants, an injunction restraining the white defendants from conveying their lot to negroes or from permitting negroes to occupy it, and an injunction restraining the negro defendants from occupying the premises.

On the strength of Shelley v. Kraemer the Court dismissed the petition only as to the defendants Street, negroes, and denied plaintiffs the right to file an amended petition against those defendants.

Plaintiffs' amended petition against defendants Leaon was also dismissed. Thereupon plaintiffs appealed to this court.

 The original petition and counts of the amended petition seeking judicial enforcement of the racial restriction agreement were properly dismissed on authority of Shelley v. Kraemer. We do not find the decision of the Supreme Court in the companion case of Hurd

v. Hodge, 334 U. S. 24, 92 L. Ed. 1187, 68 S. Ct. 847, is pertinent to this case. That decision deals with the enforcement of a restriction agreement in the District of Columbia by a Federal Court.

Although the trial court denied plaintiffs the right to file an amended petition against defendants Street, negroes, they persisted in attempting to include those defendants as adversary parties in several counts of their amended petition. Such counts were properly dismissed, and are not now before us for appellate review.

 However the amended petition contains a count which appears to state a valid claim. Although it is not as clearly pleaded as it might be, we understand it to be a claim against defendants Leaon only, as parties under the restriction agreement, for damages for their breach of the agreement. We find this is the only issue remaining in the case for our determination, that is whether such a claim might be properly maintained or whether it is foreclosed by Shelley v. Kraemer.

There has been wide discussion of Shelley v. Kraemer in the law reviews. Various authors have read much into the decision and some have anticipated with apparent assurance future action of the United States Supreme Court on the subject of restriction agreements. About the only point which a few authors appear to agree upon is that the scope of the decision is difficult to define now, and to project into the future. See: 61 Harvard Law Review, 1450; 24 Notre Dame Lawyer, 157; 48 Columbia Law Review, 1241; 3 Arkansas Law Review, 96; 21 Southern California Law Review, 358; 16 University of Chicago Law Review, 203.

For a recent case discussing the question of ''state action'' under a private housing project see Dorsey et al. v. Stuyvesant Town Corporation et al., N. Y. Court of Appeals, 87 N. E. (2d) 541.

From our own examination of the opinion in Shelley v. Kraemer we find the question for decision as stated therein by the court was the constitutionality of court enforcement of restrictive covenants intended to exclude persons of a designated race or color from ownership or occupancy of real property.

The question was presented by two cases upholding such covenants, one from Missouri, and the other from Michigan. The petitioners before the Supreme Court in both cases were negroes. They sought a review of the judgments of the state courts which restrained and ousted them from occupying the restricted premises because of their race and color.

In the Supreme Court the petitioners' principal contention was that judicial enforcement of the restrictive agreements constituted state action in violation of the Fourteenth Amendment.

Discussing the application of the Fourteenth Amendment, the Supreme Court pointed out that its inhibitions were directed against state action only, not against the actions of individuals. The court

said: "That amendment erects no shield against merely private conduct, however discriminatory or wrongful. We conclude, therefore, that the restrictive agreements standing alone cannot be regarded as a violation of any rights guaranteed to petitioners by the Fourteenth Amendment. So long as the purposes of those agreements are effectuated by voluntary adherence to their terms, it would appear clear that there had been no action by the State and the provisions of the Amendment have not been violated. Cf. Corrigan v. Buckley, 271 U S 323, 70 L Ed 969, 46 S Ct 521, supra."

Thereafter the opinion deals entirely with the question of judicial *enforcement* of the restrictions against the negro petitioners within the purview of the Fourteenth Amendment. "The Fourteenth Amendment declares 'that all persons, whether colored or white, shall stand equal before the laws of the States, and, in regard to the colored race, for whose protection the amendment was primarily designed, that no discrimination shall be made against them by law because of their color.' Strauder v. West Virginia, supra (100 US at 307, 25 L Ed 665)."

That the Supreme Court was concerned with judicial *enforcement* of the restrictions against the petitioners because of their race or color is shown by the following excerpts from the opinion:

"These cases are cases in which the purposes of the agreements were secured only by judicial enforcement by state courts of the restrictive terms of the agreements."

". . . we are called upon to consider whether enforcement by state courts of the restrictive agreements in these cases ▉ may be deemed to be acts of those States; and, if so, whether that action has denied these petitioners the equal protection of the laws which the Amendment was intended to insure."

"It is clear that but for the active intervention of the state courts, supported by the full panoply of state power, petitioners would have been free to occupy the properties in question without restraint."

"Rather, these are cases in which the States have made available to such individuals the full coercive power of government to deny to petitioners on the grounds of race and color, the enjoyment of property rights. . . ."

Finally the Supreme Court reached the following conclusion:

"We hold that in granting judicial enforcement of the restrictive covenants in these cases, the States have denied petitioners the equal protection of the laws and that, therefore, the action of the state courts cannot stand. . . . Because of the race and color of these petitioners they have been denied rights of ownership or occupancy enjoyed as a matter of course by other citizens of different race or color."

"... Upon full consideration, we have concluded ... the States have acted to deny petitioners the equal protection of the laws guaranteed by the Fourteenth Amendment."

Thus the Supreme Court holds that specific performance of a racial restrictive agreement by judicial decree is a violation of the Fourteenth Amendment although the agreement itself is constitutionally valid. The question whether the Fourteenth Amendment also forbids an action for damages for the breach of a restrictive agreement between parties under the agreement was not raised or discussed.

Except for the constitutional issue advanced under Shelley v. Kraemer there is no question under the general law but that the remedy of damages for breach of the agreement would be available. The general rule of the law of contracts is well settled that in certain cases a breach of contract may give rise to two remedies, one an action at law for damages for the breach, the other a suit in equity for the specific performance of the contract. Expressly referring to restrictions we find the principle stated: "In a proper case restrictions may be enforced in equity, or an action at law may be brought to recover damages for their breach." 26 CJS, Deeds, § 171.

This court, discussing a restriction on the use of real estate, pointed out that the enforcement of a negative covenant by injunction amounts in effect to compelling specific performance of such covenant. However, we said, where the specific performance of a restrictive covenant would be against equitable principles, we will not enforce it but will leave the complainant to his remedy at law. Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S. W. (2d) 545. In a New Jersey case the court stated that injunctive relief of enforcement of the restriction may be and frequently is denied without impairment to the covenant as a basis for damages for its breach. Welitoff v. Kohl, 105 N. J. Eq. 181, 147 A. 390. And see Borssuck v. Pantaleo, 183 Md. 148, 36 A. (2d) 527, 156 ALR, 1140.

In the case at bar the restrictive covenant may not now be specifically enforced because Shelley v. Kraemer has held judicial enforcement violates the Fourteenth Amendment. A decision of the Supreme Court construing the United States Constitution and its amendments is, of course, binding on this court. A decision of that court must be and, of course, will be followed by us to the full extent of our understanding of it.

In the annotation appended to the report of Shelley v. Kraemer in 3 ALR (2d) 441 we find this statement at page 473:

"One question which may remain open is that as to the right to maintain an action for damages for breach of a racially restrictive covenant or agreement. In view of the doctrine of Shelley v. Kraemer, may a party or property owner entitled to the benefit of a racially restrictive covenant recover damages against a party or property owner who breaches it by selling or leasing the restricted property

to someone of the excluded race? Just what effect Shelley v. Kraemer ▓▓▓▓ may have on the maintainability of such a lawsuit is a question which has not been considered in any of the cases found at this writing.

"In this connection, it may be noted that, in cases prior to Shelley v. Kraemer, a purchaser of racially restricted lots was held to have a cause of action for damages against his vendor based upon the latter's breach of a covenant that none of the lots in the subdivision should be sold to or occupied by Negroes (Eason v. Buffaloe (1930) 198 NC 520, 152 SE 496, stated infra, § 5) and purchasers of a lot were held entitled to recover damages in an action for deceit based on their vendor's fraudulent representation that all the lots in the subdivision were racially restricted (Chandler v. Ziegler (1930) 88 Colo. 1, 291 P. 822, stated infra, § 5)."

Since Shelley v. Kraemer also found the restrictive agreement itself, made by private parties, was valid as against the charge of unconstitutionality, it may follow that an action for its breach, rather than its enforcement, might lie. For the breach of a valid agreement there is ordinarily a remedy by way of damages. The fact that another remedy, specific performance, is ruled out because. of constitutional reasons, need not necessarily affect the remedy by way of damages unless it, too, is unconstitutional under the circumstances. ·

Under the facts of this case, we hold that according to the law as we now understand it, the trial court may hear and determine an action for damages for the breach of the restriction agreement in question between plaintiffs and defendants Leaon without violating any provision of the Federal or State Constitutions. We are of the opinion that an action for damages for the breach of a valid agreement need not be affected by the Fourteenth Amendment. The United States Supreme Court· has not expressly ruled on this question up to this writing so far as we are able to determine.

Therefore, we shall remand the case to the circuit court for trial only on the count seeking recovery of damages against defendants Leaon for the breach of the agreement. If the parties are so advised, they should be permitted to amend their petition in order plainly to confine their action within the bounds we have indicated. If an appeal from a judgment on that claim, should one be obtained, is taken, the entire question should be reexamined anew and under the law as it then exists. Furthermore, if a judgment shall be rendered on the merits, rather than the present judgment merely on the pleadings as now before this court, the Supreme Court of the United States may more readily grant a review, determine the question, and definitely settle the matter for the future.

Accordingly the judgment of the trial court dismissing the case against all defendants is reversed in part, and only as to the dismissal of Count Three of plaintiffs' second amended petition wherein

plaintiffs claim damages against defendants Leaon for breach of the restriction agreement. In all other respects the judgment dismissing all other claims against all defendants is affirmed. The cause is remanded for trial of said Count Three against defendants Leaon.

Judgment *affirmed in part;* and *reversed in part,* and *remanded* with directions.