PHILLIPS *v.* NAFF.

1. COVENANTS—RECIPROCAL NEGATIVE EASEMENT—RUNNING WITH LAND.

A reciprocal negative easement runs with the land sold, is not personal to owners, but is operative upon the use of the land by any owner having actual or constructive notice thereof, passing its benefits and carrying its obligations to all purchasers of land subject to its affirmative or negative mandates.

2. CONSTITUTIONAL LAW—EQUAL PROTECTION—JUDGMENTS OF STATE COURTS ENFORCING PRIVATE AGREEMENTS.

Decrees and judgments of State courts for the enforcement of private agreements are, in effect, State action within the scope of the inhibition of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

3. SAME—EQUAL PROTECTION—PROPERTY RIGHTS.

Equality in the enjoyment of property rights and freedom from discrimination by the States in their enjoyment were among the basic objectives sought to be effectuated by framers of the Fourteenth Amendment to the Constitution of the United States.

4. SAME—RECIPROCAL NEGATIVE EASEMENT—RACIAL RESTRICTION—EQUAL PROTECTION—VOLUNTARY ADHERENCE—COURTS—STATE ACTION.

"Voluntary adherence" to a reciprocal negative easement restricting use of property to white persons of pure Caucasian race does not extend to an action for damages for the breach of such covenant, since such an action invokes the aid of a

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Covenants, Conditions and Restrictions § 308 *et seq.*
[2-7, 9] 14 Am Jur, Covenants, Conditions and Restrictions § 208.
[2-7, 9] Restrictive covenants, conditions, or agreements in respect of real property discriminating against persons on account of race, color, or religion. 3 ALR2d 466.
[8] 14 Am Jur, Covenants, Conditions and Restrictions § 212.

State court and involves State action that is proscribed by the equal protection clause in the Fourteenth Amendment to the Constitution of the United States.

5. Covenants—Action for Damages.
Imposition of liability in actions for damages for breach of a reciprocal racial restriction constitutes an indirect method of enforcement.

6. Constitutional Law—Public Policy—Courts.
Courts are obligated to refrain from exertion of judicial power either in equity or at law in the enforcement of private agreements that are violative of the public policy of the United States as manifested in the Constitution, treaties, statutes and applicable legal precedents.

7. Same—Equal Protection—Reciprocal Racial Restriction—Action for Damages.
The equal protection clause of the Fourteenth Amendment to the Constitution of the United States prevents the maintenance of an action for damages for the breach of a reciprocal racial restriction on the use of property.

8. Covenants—Construction.
Restrictive covenants may not be extended by construction.

9. Same—Construction—Reciprocal Racial Restriction—Ownership—Burden on Power of Alienation.
Construction of a reciprocal covenant reciting that the land was to be used by white persons of pure Caucasian race so as to impose a duty on the owner of a lot to inhibit the right of possession on the part of a purchaser, not of the Caucasian race, would in effect impose a burden on the power of alienation inconsistent with ordinary rights of ownership including the power of disposal.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted January 8, 1952. (Docket No. 5, Calendar No. 45,121.) Decided March 6, 1952. Rehearing denied May 16, 1952.

Action by Jesse Paul Phillips and wife against Faris Naff and wife for damages caused by violation of restrictive covenant. Action dismissed on motion. Plaintiffs appeal. Affirmed.

*Charles F. Welsh* and *Bruce Daines,* for plaintiffs.

*Hand, Sullivan, Hull & Kiefer (Joseph A. Sullivan, John B. Kiefer, Willis M. Graves* and *John W. Roxborough, II,* of counsel), for defendants.

*Amicus Curiae:*

*Morris Zwerdling (Solomon Bienenfeld* and *Weiswasser, Jaffe & Radner,* of counsel), for Jewish Community Council of Detroit.

CARR, J. Plaintiffs instituted an action at law in the circuit court to recover damages for an alleged breach of a reciprocal racial restriction. The declaration filed alleged that they were the owners of lot 14 in City Heights subdivision embracing certain land in Highland Park, that the defendants were the owners of lot 15 adjoining plaintiffs' property, and that prior to March 4, 1941, the owners of 75% of the frontage of lots on Tennyson avenue in said subdivision, in the block bounded on the east by John R. street and on the west by Woodward avenue, entered into an agreement affecting their respective properties and containing the following provision:

"The use and occupancy of all lands subject hereto is hereby restricted to white persons of pure Caucasian race and no such lands and premises shall be occupied or used in whole or in part by any other than a white person of the Caucasian race save and except that any white person, whether as owner or tenant, may employ thereon persons who are not persons of pure Caucasian race and any persons so employed thereon as personal or domestic servants or as janitors, caretakers, or watchmen may be provided living quarters on the premises where so employed."

It was further provided that the agreement should become effective when executed by the owners or purchasers of 75% of such frontage, and should continue in force and effect until the expiration of 2 years after the recording of an instrument in the office of the register of deeds of the county, executed by the owners of the property, altering the action taken. It was also stated that from the time of the effective date of the instrument, which was recorded March 4, 1941, the lands affected should be "subject to the covenants, agreements and restrictions herein contained which shall run with the land."

The exhibits to the declaration indicate that the respective owners of lots 14 and 15 executed the agreement. Plaintiffs obtained their property by conveyance recorded February 5, 1945, and the warranty deed under which defendants acquired their title was recorded December 18, 1943. Plaintiffs claimed that defendants violated the restrictions in question on or about March 11, 1950, by conveying lot 15 to persons of the Negro race and placing such purchasers in possession and occupancy.

Defendants filed a motion to dismiss the case on the ground that the facts alleged in the declaration did not entitle plaintiffs to recover the damages claimed. Following a hearing the trial court came to the conclusion that the action constituted an attempt to enforce indirectly a racial restrictive covenant, and in practical effect was repugnant to the 14th Amendment to the Federal Constitution as construed by the supreme court of the United States in *Shelley* v. *Kraemer,* and *McGhee* v. *Sipes,* 334 US 1 (68 SC 836, 92 L ed 1161, 3 ALR2d 441). The trial judge further indicated in the opinion filed by him that the parties to the agreement imposing the restriction relied on the rule recognized by the courts in this State, and elsewhere, prior to the decision in *Shelley* v. *Kraemer, supra,* and believed the equi-

table remedy by way of injunction would be available to restrain any breach of the covenant. On the theory that the parties were mistaken as to their antecedent and existing private legal rights, it was suggested that defendants might seek to have the agreement set aside in equity, or defend the law action on the ground of mistake, attention being directed in this regard to *Stone* v. *Stone,* 319 Mich 194 (174 ALR 1349). For the reasons indicated the motion to dismiss was granted, and plaintiffs have appealed from the order entered.

It is appellants' claim, as set forth in their declaration, that the reciprocal covenant in question here is of such nature as to run with the land, as expressly provided in the agreement executed by the lot owners. We do not understand that defendants challenge such claim. It finds support in numerous prior decisions of this Court, including *Sanborn* v. *Mc-Lean,* 233 Mich 227 (60 ALR 1212), where it was held that:

"A reciprocal negative easement runs with the land sold, is not personal to owners, but is operative upon the use of the land by any owner having actual or constructive notice thereof, passing its benefits and carrying its obligations to all purchasers of land subject to its affirmative or negative mandates." (Syllabus, par 2.)

See, also, *Malicke* v. *Milan,* 320 Mich 65 (4 ALR2d 1412). As before noted, neither plaintiffs nor defendants were parties to the agreement imposing the restrictions.

The specific question before the court in *Shelley* v. *Kraemer, supra,* was whether judicial enforcement by State courts of covenants restricting the use or occupancy of real property to persons of the Caucasian race violated the equal protection clause of the 14th Amendment. Pointing out that said Amend-

ment is directed against State action only, and is not applicable to private conduct, it was held that decrees and judgments of State courts for the enforcement of private agreements are, in effect, State action and thus within the scope of the inhibitory provision of the Amendment. In reaching such conclusion, it was said, in part:

"It should be observed that these covenants do not seek to proscribe any particular use of the affected properties. Use of the properties for residential occupancy, as such, is not forbidden. The restrictions of these agreements, rather, are directed toward a designated class of persons and seek to determine who may and who may not own or make use of the properties for residential purposes. The excluded class is defined wholly in terms of race or color; 'simply that and nothing more.'

"It cannot be doubted that among the civil rights intended to be protected from discriminatory State action by the Fourteenth Amendment are the rights to acquire, enjoy, own and dispose of property. Equality in the enjoyment of property rights was regarded by the framers of that Amendment as an essential pre-condition to the realization of other basic civil rights and liberties which the amendment was intended to guarantee. Thus, section 1978 of the Revised Statutes, derived from section 1 of the civil rights act of 1866 which was enacted by Congress while the Fourteenth Amendment was also under consideration, provides:

" 'All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.'

"This court has given specific recognition to the same principle. *Buchanan* v. *Warley*, 245 US 60 (1917), (38 S Ct 16, 62 L ed 149, LRA1918C, 210, Ann Cas 1918A, 1201). * * *

"Since the decision of this court in the *Civil Rights Cases,* 109 US 3 (1883), (3 S Ct 18, 27 L ed 835), the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.

"We conclude, therefore, that the restrictive agreements standing alone cannot be regarded as violative of any rights guaranteed to petitioners by the Fourteenth Amendment. So long as the purposes of those agreements are effectuated by voluntary adherence to their terms, it would appear clear that there has been no action by the State and the provisions of the amendment have not been violated. *Cf. Corrigan* v. *Buckley,* 271 US 323 (46 S Ct 521, 70 L ed 969).

"But here there was more. These are cases in which the purposes of the agreements were secured only by judicial enforcement by State courts of the restrictive terms of the agreements. The respondents urge that judicial enforcement of private agreements does not amount to State action; or, in any event, the participation of the State is so attenuated in character as not to amount to State action within the meaning of the Fourteenth Amendment. Finally, it is suggested, even if the States in these cases may be deemed to have acted in the constitutional sense, their action did not deprive petitioners of rights guaranteed by the Fourteenth Amendment. * * *

"The enforcement of the restrictive agreements by the State courts in these cases was directed pursuant to the common-law policy of the States as formulated by those courts in earlier decisions. In the Missouri case, enforcement of the covenant was directed in the first instance by the highest court of the State after the trial court had determined the agreement to be invalid for want of the requisite

number of signatures. In the Michigan case, the order of enforcement by the trial court was affirmed by the highest State court. The judicial action in each case bears the clear and unmistakable imprimatur of the State. We have noted that previous decisions of this court have established the proposition that judicial action is not immunized from the operation of the Fourteenth Amendment simply because it is taken pursuant to the State's common-law policy. Nor is the Amendment ineffective simply because the particular pattern of discrimination, which the State has enforced, was defined initially by the terms of a private agreement. State action, as that phrase is understood for the purposes of the Fourteenth Amendment, refers to exertions of State power in all forms. And when the effect of that action is to deny rights subject to the protection of the Fourteenth Amendment, it is the obligation of this court to enforce the constitutional commands.

"We hold that in granting judicial enforcement of the restrictive agreements in these cases, the States have denied petitioners the equal protection of the laws and that, therefore, the action of the State courts cannot stand. We have noted that freedom from discrimination by the States in the enjoyment of property rights was among the basic objectives sought to be effectuated by the framers of the Fourteenth Amendment. That such discrimination has occurred in these cases is clear."

On behalf of appellants it is conceded that, in view of the decision in *Shelley* v. *Kraemer,* they may not maintain an equitable suit for injunctive relief. They insist, however, that an action for damages under the factual situation set forth in the declaration is not one for the enforcement of the discrimination, and is not within the inhibition of the 14th Amendment. We think that the statement in the language above quoted that State action is not involved so long as the purposes of agreements are effectuated by "voluntary adherence" to their terms is signifi-

cant. Plaintiffs' action for damages may not be regarded as involving individual conduct solely. The aid of the court is invoked on the theory that the agreement is valid as between the parties who signed it and their successors in title, and that the State acting through the courts will permit the recovery of damages for failure to observe it. In other words, plaintiffs assert the right to invoke State action within the meaning of the term as discussed in *Shelley* v. *Kraemer, supra.*

We are in accord with the view of the trial judge that liability to suits for damages for breach of a reciprocal racial restriction constitutes an indirect method of enforcement. In the instant case it is obvious that if plaintiffs are entitled to recover damages the owners of other lots in the restricted area may do likewise. It is a reasonable assumption that the owner of a restricted lot having the opportunity and desiring to sell to a purchaser not of the Caucasian race would be reluctant to do so if plaintiffs' position is correct. It may be noted, also, that since the restrictive covenant runs with the land, defendants' grantees, who are, it appears, now in possession, hold the property subject thereto. The question naturally suggests itself, under plaintiffs' theory, as to the liability of the present owners for damages in the event that they convey the property to a grantee of their own race.

*Shelley* v. *Kraemer, supra,* was decided May 3, 1948. On the same date the court rendered its decision in *Hurd* v. *Hodge,* 334 US 24 (68 S Ct 847, 92 L ed 1187). The latter case came to the court on certiorari to the United States Court of Appeals for the District of Columbia, which affirmed a judgment of the district court enforcing a covenant forbidding sales to Negroes of the land involved. By the specific terms of the restrictive covenant such conveyance could not be made under penalty of $2,000 which

was declared to be a lien against the property. It was expressly recognized, as in *Shelley* v. *Kraemer,* that under pertinent Federal statutes private restrictive agreements are not invalidated so long as their purposes are achieved through "voluntary adherence" to their terms. The court pointed out that section 1978 of the Revised Statutes (14 Stat 27) was derived from section 1 of the civil rights act of 1866. In discussing the purposes sought to be accomplished thereby and by the 14th Amendment, it was said in part:

"It is clear that in many significant respects the statute and the Amendment were expressions of the same general congressional policy. Indeed, as the legislative debates reveal, one of the primary purposes of many members of Congress in supporting the adoption of the Fourteenth Amendment was to incorporate the guaranties of the civil rights act of 1866 in the organic law of the land. Others supported the adoption of the Amendment in order to eliminate doubt as to the constitutional validity of the civil rights act as applied to the States.

"The close relationship between section 1 of the civil rights act and the Fourteenth Amendment was given specific recognition by this court in *Buchanan* v. *Warley,* 245 US 60, 79 (38 S Ct 16, 62 L ed 149, LRA1918C 210, Ann Cas 1918A 1201). There, the court observed that, not only through the operation of the Fourteenth Amendment, but also by virtue of the 'statutes enacted in furtherance of its purpose,' including the provisions here considered, a colored man is granted the right to acquire property free from interference by discriminatory State legislation. In *Shelley* v. *Kraemer, supra,* we have held that the Fourteenth Amendment also forbids such discrimination where imposed by State courts in the enforcement of restrictive covenants. That holding is clearly indicative of the construction to be given to the relevant provisions of the civil rights act in

their application to the courts of the District of Columbia. * * *

"But even in the absence of the statute, there are other considerations which would indicate that enforcement of restrictive covenants in these cases is judicial action contrary to the public policy of the United States, and as such should be corrected by this court in the exercise of its supervisory powers over the courts of the District of Columbia. The power of the Federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in the Constitution, treaties, Federal statutes, and applicable legal precedents. Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power.

"We are here concerned with action of Federal courts of such a nature that if taken by the courts of a State would violate the prohibitory provisions of the Fourteenth Amendment. *Shelley* v. *Kraemer, supra.* It is not consistent with the public policy of the United States to permit Federal courts in the Nation's capital to exercise general equitable powers to compel action denied the State courts where such State action has been held to be violative of the guaranty of the equal protection of the laws. We cannot presume that the public policy of the United States manifests a lesser concern for the protection of such basic rights against discriminatory action of Federal courts than against such action taken by the Courts of the States."

The decree specifically enforcing the restriction was reversed, the court making no reference to any possible right to recover damages for breach of the covenant restricting the right of sale. Because of the fact that the specific issue involved in the case at bar was not expressly determined by the court in *Shelley* v. *Kraemer,* or discussed in *Hurd* v. *Hodge,*

some uncertainty seems to have arisen, as is indicated in the annotation following the report of the former case in 3 ALR2d 441. The following comment (p 473) is significant:

"One question which may remain open is that as to the right to maintain an action for damages for breach of a racially restrictive covenant or agreement. In view of the doctrine of *Shelley* v. *Kraemer,* may a party or property owner entitled to the benefit of a racially restrictive covenant recover damages against a party or property owner who breaches it by selling or leasing the restricted property to someone of the excluded race? Just what effect *Shelley* v. *Kraemer* may have on the maintainability of such a lawsuit is a question which has not been considered in any of the cases found at this writing.

"In this connection, it may be noted that, in cases prior to *Shelley* v. *Kraemer,* a purchaser of racially restricted lots was held to have a cause of action for damages against his vendor based upon the latter's breach of a covenant that none of the lots in the subdivision should be sold to or occupied by Negroes (*Eason* v. *Buffaloe* [1930], 198 NC 520 [152 SE 496], stated *infra,* § 5) and purchasers of a lot were held entitled to recover damages in an action for deceit based on their vendor's fraudulent representation that all the lots in the subdivision were racially restricted (*Chandler* v. *Ziegler* [1930], 88 Colo 1 [291 P 822], stated *infra,* § 5)."

Plaintiffs rely on the case of *Weiss* v. *Leaon,* 359 Mo 1054 (225 SW2d 127). There the action was brought in the trial court to enforce a racial restriction agreement or, in the alternative, to recover damages for its breach. The trial court dismissed the case, relying on the decision of the United States supreme court in *Shelley* v. *Kraemer.* The restrictive covenant involved, created by private agreement, provided that none of the lots in the restricted area might be sold to Negroes or occupied by persons of

that race. The defendant Leaon had, so it was alleged, sold, or agreed to make a sale, in violation of the covenant. The supreme court of Missouri held that the suit was properly dismissed insofar as it sought injunctive relief, but declined to hold that a count in the petition stating a claim for damages against Leaon for the alleged breach was properly included in the dismissal order. Attention was called to the fact that the right to recover damages was not directly involved in *Shelley* v. *Kraemer,* and that the decision in *Hurd* v. *Hodge* rested primarily on the Federal statute. The case was therefore remanded for trial. The language used in expressing such conclusion indicates that the court considered the question as one for determination by the supreme court of the United States.

The decision of the Missouri court sustaining the count for damages must be regarded as supporting plaintiffs' theory in the case at bar. However, we are not in accord with such decision. As above suggested, if a sale of property subject to a reciprocal racial covenant cannot be made without rendering the grantor liable to suits for damages, such fact, it may be assumed, would operate to inhibit freedom of purchase by those against whom the discrimination is directed, and also to place a burden on the right of an owner to sell to a purchaser of his own selection. We think the reasons on which the decision of the United States supreme court in *Shelley* v. *Kraemer* was based operate in bar of an indirect method of enforcement, and are sufficiently broad in scope as to cover the rights of those affected in the instant controversy. The 14th Amendment, as construed, prevents the maintenance of the action for damages instituted by plaintiffs.

Defendants advance the further claim that the allegations in the declaration, properly construed, do not charge a violation of the language in the re-

strictive covenant. It will be noted that said restriction, hereinbefore quoted, refers merely to the use and occupancy of the lots subject thereto. No restraint was sought to be imposed on the right of sale and any provision to that effect would be invalid under the holding of this Court in *Porter* v. *Barrett,* 233 Mich 373 (42 ALR 1267), because repugnant to the common-law rule forbidding restraints on alienation. It may be noted in passing that the rule in Missouri is otherwise. *Swain* v. *Maxwell,* 355 Mo 448 (196 SW2d 780).

Plaintiffs' declaration avers that defendants put their grantees in "possession and occupancy of the said premises." The claim is in effect that although defendants had the right to sell their lot without restraint nonetheless it was their duty, created by the covenant, to insure that the purchaser, or purchasers, if not of the Caucasian race, should not occupy the premises. Defendants argue that the right of possession was a mere incident to the ownership of the property by the purchasers. The agreement contained no provisions as to restrictive clauses in conveyances. It is a fair inference from the language used that the parties contemplated that enforcement could be obtained under the provision that the restrictions imposed should "run with the land," in other words, that the remedy by way of injunctive proceedings in equity would continue to be available. This Court has recognized in many instances that restrictive covenants may not be extended by construction. Thus in *Putnam* v. *Ernst,* 232 Mich 682, 688, it was said:

"Restrictions are not favored in law. They will not be enlarged or extended by construction. They will be construed as found."

See, also, *Casterton* v. *Plotkin,* 188 Mich 333; *In re Nordwood Estates Subdivision;* 291 Mich 563; *Broeder* v. *Sucher Brothers, Inc.,* 331 Mich 323.

To construe the restrictive covenant in the instant case as imposing a duty on the owner of a lot in the area affected to inhibit the right of possession on the part of a purchaser, if not of the Caucasian race, would result in practical effect in imposing a burden on the power of alienation. Such a burden is inconsistent with ordinary rights of ownership including the power of disposal. In the instant case the power to sell to a person or persons not of the Caucasian race could not have been limited directly, under the decision in *Porter* v. *Barrett, supra,* and it may not be done indirectly by accepting the interpretation that plaintiffs seek to place on the language of the agreement. Such a result is not consistent with the settled policy of the State, nor is it justified by the provisions of the restrictive covenant.

The discussion of other questions suggested by the arguments of counsel is not required. For the reasons indicated, we think that the trial court came to the correct conclusion and the order from which the appeal has been taken is affirmed. Defendants may have costs.

NORTH, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

DETHMERS, J. (*concurring*). I concur in the result for the last reason advanced in this opinion.