MARION A. RIDGWAY, Plaintiff, *v.* PAULINE TERESA COCKBURN, Defendant.

Supreme Court, Westchester County, June 3, 1937.

*Francis A. Griffen* [*Morris Orenstein* of counsel], for the plaintiff.

*Hays, St. John, Abramson & Schulman* [*Arthur Garfield Hays* of counsel], for the defendant.

DAVIS, J. In 1928 Max Held Realty Corporation acquired a tract of land in the town of Greenburgh, Westchester county, and undertook to establish a residential development known as Edgemont Hills. Various portions of the development were thereafter conveyed to different grantees, subject to a number of restrictive covenants. Except as hereinafter mentioned, the covenants in the various conveyances made by the common grantor were uniform. The plaintiff has become the owner of one of the parcels of land, the defendant of another. Both took title subject to the following. covenant: " That no part of the said parcels shall ever be used or occupied by or sold, conveyed, leased, rented or given to negroes or any person or persons of the negro race or blood, except that colored servants may be maintained on the premises."

There can be no doubt that the defendant is partly " colored." She considers herself an octoroon; that is, a person having one-eighth negro blood. She concedes that she belongs to " the colored race," and has in the past called herself a " colored person." Her husband, Joshua . Cockburn, is concededly a " colored man." The proof indicates that he has at least three-quarters negro blood. In every outward appearance he is what would be called, in common speech, a negro. There is no reflection whatever on the character of either the defendant or her husband; nothing to indicate that they are anything other than an entirely respectable couple. The plaintiff brings this action simply to enforce the covenant, and asks an injunction restraining the defendant and others assisting her from using or occupying the premises.

A preliminary question is whether the defendant comes within the class contemplated by the covenant. The question should also include the defendant's husband, who contributed to the cost of erecting the house on the premises, and who undoubtedly plans to occupy the house jointly with his wife. The defendant contends that the covenant should be construed to apply only to persons of unmixed African negro blood. With that contention I disagree. The language of a contract is to be given its natural and ordinary meaning. (*Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125.) The intention of the parties is the controlling factor. (*Manson* v. *Curtis*, 223 N. Y. 313, 320.) With these familiar rules in mind, I hold that the word " negroes " was used synonymously with the term " colored persons." The fact that " colored " servants are named as exceptions is internal evidence of the correctness of this

construction. I find, therefore, that the defendant is a negro, or a person of the negro race or blood, within the meaning of the covenant. It follows necessarily that the defendant's husband falls within the same class.

The defendant challenges the plaintiff's right to maintain the action on the ground that there is no privity of contract between the parties. The question is whether this is an instance of " a general scheme for the improvement or development of real property." If so, the covenant is enforcible by any grantee as against any other. (*Korn* v. *Campbell*, 192 N. Y. 490.) The evidence shows that the common grantor made eighteen separate conveyances to different grantees. Included in these deeds were numerous restrictive covenants in addition to the one immediately involved here, which may for convenience be called the " negro covenant." The restrictions were not entirely uniform in all the deeds, and the defendant, therefore, contends that there could not have been a general scheme of development. The negro covenant was included in fifteen deeds, and omitted from the other three. It was established, however, that the omission of the covenant from the three deeds (all running to the same grantee) was due to mistake on the part of the draftsman. There are various differences in some of the other covenants, but these in my opinion were of a minor character and did not impair the general scheme. For example, some of the deeds required that the garage be attached to the dwelling, while others did not; it was explained that these requirements varied according to the size and topography of the particular lot conveyed. Size and topography of the land also accounted for differences in the setback provisions. There were some variations in the requirements as to building costs, but these appear to have been occasioned by the decline in construction costs generally. In one case the husband of the grantee was permitted to maintain a dental office, but such a use is not foreign to a residential district. After considering all the conveyances, and the oral evidence submitted by the plaintiff as to the purposes and methods of the developing company, I am of the opinion that this case comes directly within the first of the classifications described in *Korn* v. *Campbell* (*supra*), and that the covenant is one which may be enforced by one grantee against another. Absolute uniformity in all details is not essential to a general scheme of development. The test is whether the facts show that " the purpose of the restriction is benefit to other owners, present and prospective." (*Bristol* v. *Woodward*, 251 N. Y. 275.) In the present case I find that such was the purpose, and I therefore conclude that the plaintiff may maintain the action.

The defendant has set up numerous defenses. In considering these it is to be borne in mind that the defendant did not buy the property in ignorance of the covenant. She was fully aware of it. She consulted counsel, and was advised that the neighboring owners would be helpless to enforce it. With full knowledge of the nature of her contract she elected to rely upon this advice, and not only to purchase the land but to erect upon it a house of substantial value. In practical effect she defied the other owners to compel observance of the covenant; and by her defiant attitude she assumed deliberately the risk of being deprived of the use of the property if her opinion of the law was a mistaken one. The defenses relied upon are as follows:

(1) *Public policy.* It is claimed that the covenant is contrary to the public policy of the state, and is therefore void. The public policy of the state must be found somewhere in the body of its law. (*Mertz* v. *Mertz*, 271 N. Y. 466.) The defendant cites no law, either constitutional, statutory or judicial, which lends any effective support to her theory. Sections 40 and 41 of the Civil Rights Law and section 514 of the Penal Law apply only to places of public accommodation. I know of no public policy which bars any group of individuals from contracting among themselves for the exclusive enjoyment of their own private property.

(2) *Constitutionality.* The second defense is to the effect that the enforcement of the covenant would deprive the defendant of her property without due process of law, and would deny her the equal protection of the laws, in violation of the federal constitution, and in particular of the Fourteenth Amendment. It is sufficient to say that the United States Supreme Court has held that a covenant of this precise character violated no constitutional right. (*Corrigan* v. *Buckley*, 271 U. S. 323.)

(3) *Indefiniteness.* In the third defense it is claimed that the covenant is void for indefiniteness. This argument is based on the contention that, since the covenant does not define a negro or specify any particular percentage of negro blood, the court cannot determine what persons fall within the intended class. In view of the construction already placed on the term " negro," the meaning of the covenant and its applicability to the defendant and her husband are not at all doubtful.

(4) *Equity.* The fourth defense alleges that the covenant is unreasonable, oppressive and lacking in equity. This claim has no substantial foundation. One who voluntarily assumes an obligation, without any pretense of duress, may not reasonably claim oppression and inequity when observance of the duty is demanded. As between these parties, the equities are entirely with the plaintiff,

who seeks merely to possess her property on the terms agreed; and not with the defendant, who asks the court to protect her in the open violation of her contract.

(5) *Good faith and clean hands.* The defendant was permitted to amend her answer at the trial so as to plead, as an additional defense, that the plaintiff herself had breached the covenant contained in her deed, and, therefore, comes into court with unclean hands. The basis of the defense is the claim that the plaintiff's house is not two and one-half stories in height, as one of the covenants requires. Two and one-half stories evidently means two full stories, with an air space above. I find that the plaintiff's house is a two and one-half story house and does not violate the restrictive covenant.

Under this defense it is claimed also that the plaintiff was induced to institute this action in bad faith by one Zambler. The claim was not supported by any proof, and I find that the fact is otherwise.

(6) *Estoppel.* By a further amendment at the trial the defendant was permitted to plead an estoppel. The defense is based on the fact that this action was not commenced until after the defendant had erected her house. An estoppel is not created unless one party has acted in reliance upon the conduct of the other. (*Malloney* v. *Horan,* 49 N. Y. 111; *Lee* v. *Tower,* 124 id. 370.) There is no evidence here that the defendant built her house in reliance upon any act or omission of the plaintiff. *New York Rubber Co.* v. *Rothery* (107 N. Y. 310) seems to be decisive in holding that under facts such as are presented here there is no estoppel.

In view of certain arguments which have been advanced by counsel, it may be proper to add that the issues in the case do not warrant the discussion of abstract social theories. The question is whether a contractual duty, knowingly and voluntarily assumed, may be enforced. If the contract is valid and enforcible, its wisdom is not a question for the court. Under similar circumstances the remedy granted here is equally available to all litigants, regardless of race, or color.

Judgment for the plaintiff for the relief demanded in the complaint.