OPINION OF THE COURT
Jerome L. Steinberg, J.
Both sides move for summary judgment. The undisputed facts are as follows:
Plaintiff is in the auto leasing business. On April 19, 1978, plaintiff entered into a written lease with defendant Taurus for a Jaguar automobile. The lease was guaranteed by defendant Sgarlato. For the purpose of this motion, defendants will be treated as a single entity. The answer of defendant Taurus raises a question of jurisdiction, which would require a traverse for resolution, however, in view of our determination on these motions, the question becomes moot.
In accordance with the lease, defendant made a down payment of $946 as well as 12 of the 58 monthly payments of $473 when the car was stolen.
Plaintiff seeks summary judgment in the sum of $5,616.48, plus 15% counsel fees, based upon the following rationale: If all payments were made as per the lease, defendant would have paid a total of $28,380 over the life of the lease, plus $2,130 on the option to purchase, making a grand total of $30,510. In so calculating, plaintiff is apparently assuming that since defendants cannot return the stolen car, they are presumed to have exercised the option to purchase. It appears that plaintiff realized $18,250 from the proceeds of theft insurance on the car. This sum, when added to the total of the down payment plus the 12 monthly rental payments, made up to the time of the theft, equals $24,877, which, when subtracted from the sum of $30,510 leaves a balance of $5,638, which plaintiff seeks by this motion.
If the court were to accept this interpretation of the lease, plaintiff would be unjustly enriched, since it would receive immediately, moneys which were to be paid over a five-year period; and in addition, it would save four years of finance charges to Israel Discount Bank. Thus, the theft of the car would result in a windfall to plaintiff at defendant’s expense. Clearly, no interpretation of the lease ought to be construed to work an injustice.
Paragraph 6-D of the lease states, in part, as follows: "if *743 vehicle is * * * stolen and not recovered, lessor shall have the option of providing a substitute vehicle (which shall be reasonably similar to vehicle) or, if lessor elects not to provide a substitute vehicle, then this lease shall be deemed to terminate in the month of * * * loss, and lessee’s obligation in either of such events shall be limited to any rent or additional rent due and payable through such month, plus the difference between any payment received from any insurance company and the amount of lessor’s actual damage or loss”.
Upon receiving defendant’s cross motion, as well as their papers in opposition to this motion, plaintiff has apparently retrenched, and now argues that since this transaction was financed through Israel Discount Bank, and, at the time of the theft, plaintiff was indebted to the bank for $19,261.39; and since it received only $18,250 in insurance proceeds; it did, in fact, sustain an "actual loss” of $1,011.39, and that this sum, plus the amount of the purchase option rider ($2,130) ought to be due, making a total of $3,141.39.
Without belaboring the point, it appears from the motion papers that plaintiff financed not only the value of the car, but also the option purchase rider, with the result that plaintiff may have obtained more from the financing arrangement than it actually paid for the car. Thus, plaintiff would have had an actual (realized) profit at the very inception of the lease, especially when defendants’ down payment is included. To this plaintiff also seeks to add the cost of the option to purchase (which was already included in the financing charges); thus, in effect, seeking to charge defendant twice for the same expense.
Moreover, the answer as to whether plaintiff sustained a profit or loss on this transaction does not depend upon the amount owed to the bank compared to the amount realized from insurance. In the first place, this would not take into account the down payment; in the second place, defendants were not a party to (nor may they even have been aware of) the contract between plaintiff and the bank; and finally, it is obvious that plaintiff was paying the bank at a lower monthly rate than it was receiving from defendants, and pocketing the difference. Even assuming that defendants should be held responsible for plaintiff’s financing charges, in order to ascertain whether there was a profit or loss, we must measure the difference between the amount outstanding on the bank loan and the insurance proceeds against the difference between the *744 amount plaintiff paid to the bank and the amount it received from defendants by way of down payment and monthly rental charges.
While the court does not have the exact figures, it is obvious that plaintiff has a surplus, rather than the loss it suggests, since the down payment alone is almost equal to the difference between what is owed to the bank and insurance proceeds.
Defendants’ position is that plaintiff received $18,250 in insurance plus a $946 down payment plus 12 monthly installments of $496.65 each, making a total received by plaintiff of $25,155.80.* Since the vehicle only cost plaintiff $21,300, defendant contends that there is no "actual loss” but rather a profit. Thus defendant claims it owes no money to plaintiff, pursuant to paragraph 6-D of the lease agreement.
In determining whose interpretation of the lease is correct, the court is bound to give words and phrases their ordinary and customary meaning, rather than resort to stilted or strained interpretations (Ridgway v Cockburn, 163 Misc 511, 512).
With this caveat in mind, the court is called upon to consider several key words or phrases in the lease. The first is "actual loss”. For the reasons set forth in defendant’s argument, as well as the court’s analysis of plaintiff’s argument, the court finds that there was no actual loss to plaintiff. All that plaintiff can logically claim is that the theft of the automobile resulted in a reduction of profit.
Next, we must consider what is meant by the phrase "the lease shall be terminated in the month of the loss”. According to plaintiff’s interpretation, it is only its obligation under the lease which will be terminated. As far as defendants are concerned, defendants’ obligations would not be terminated; rather, they would be accelerated. Such an interpretation is both illogical and inequitable, and must be rejected.
Next, we come to what is meant by the phrase, "lessee’s obligation * * * shall be limited to any rent * * * payable through such month, plus the difference between any payment received from any insurance company and the amount of *745 lessor’s actual damage or loss”. If the word "limited” is to have any meaning whatsoever, we cannot accept plaintiff’s argument. There is no "limitation” in what plaintiff is seeking, when compared to defendant’s obligations had the car not been stolen (other than the $18,250 reduction representing proceeds of insurance; the premiums for which were paid by defendant).
Finally, we must consider what is meant by "lessor shall have the option of providing a substitute vehicle” which, if it elected not to do so would bring into play the portion of the lease which is in dispute. Here again, we must assume that the phrase had some purpose other than to obfuscate. What could possibly motivate plaintiff to provide a substitute vehicle, if by refusing to do so it would immediately realize whatever profit it would have earned over a four-year period, plus saving four years of interest to the financing bank, to say nothing of incidental expenses entailed in "servicing” this lease over an additional four-year period. To accept plaintiff’s version of the lease would make a sham out of an "option” which under no conceivable circumstances would ever be exercised.
On the other hand, if plaintiff has to choose between accepting the reduced profit which defendants’ argument suggests, and replacing the vehicle and continuing the contract until its termination, in the hopes of realizing the additional profit potentially offered by a full term lease, the "option” becomes a viable meaningful choice for plaintiff.
Almost as an afterthought, plaintiff raises a point, in a letter dated May 9, 1980, which was not raised either in its moving or reply papers, nor in opposition to defendants’ cross motion for summary judgment. In this letter, the attention of the court is directed to paragraph 3 of the printed rider, which is entitled "Open End Purchase Rider”, wherein sandwiched in between paragraphs which purport to give lessor an option to purchase the vehicle at the expiration of the lease, is the following: "If the vehicle is lost or stolen * * * the lease shall be deemed terminated as at the end of the month in which such event occurs, and thereupon lessee shall pay to lessor all sums as calculated * * * under paragraph 2 above, except that the amount payable by lessee shall be reduced by the net amount of insurance proceeds received by lessor.” Paragraph 2 states: "At the end of the lease term or its sooner termination by lessee as provided in paragraph 1, above, *746 lessee shall have the option to purchase the vehicle * * * If lessee exercises the said option, the price payable by lessee (shall be $2130) plus all rentals and other charges then past due, and also the full amount of future rentals for the balance, if any of the entire term of the lease”.
Aside from the fact that the letter is tantamount to a reply to a reply, which is frowned upon by the courts (indeed this letter prompted a further affirmation from Sgarlato, which, if considered by the court might among other things raise a factual issue requiring a trial on plaintiff’s motion, but has little relevance to defendants’ cross motion), and aside from the fact that the paragraph is hardly located in a place calculated to fairly advise lessee of the potential burden it imposes (indeed in order to grasp the import of paragraph 3 one must reread paragraph 2, in order to comprehend paragraph 2, one must reread paragraph 1) a detailed, though necessarily labored, analysis of the "Open End Purchase Rider” could lead to the conclusion that that portion of the lease supports plaintiff’s argument, although defendant in no way concedes the point.
Assuming, arguendo, that the purchase rider means what plaintiff says it does, the court would have to reconcile the conflict between this "option rider” portion of the lease and the basic lease agreement. There is no way in which we can do so. Therefore it becomes incumbent upon the court to decide which of the conflicting versions should prevail. In reaching its conclusion, the court is guided by the following legal and equitable principles:
1. If more than one interpretation of an instrument is possible, the interpretation that will work an injustice or undue hardship is least favored. (Pioneer Credit Corp. v San Miguel, 275 App Div 636, 638.)
2. Where an instrument contains conflicting or ambiguous language, the language shall be construed in favor of the party which did not prepare the instrument. (Gillet v Bank of Amer., 160 NY 549, 554.)
3. It is the general rule that if two clauses of an agreement are so totally repugnant that they cannot stand together, the first of such clauses in the contract shall be received and the subsequent one rejected (Matter of Carr, 49 NYS2d 713, 717). This is particularly applicable in this instance where the same subject matter is dealt with in two places, first in the main body of the contract and secondly in an obscure place where *747 one would be unlikely to find it. As a result of this, the first treatment of the option in the contract shall govern and no weight should be given to the rider at the end of the contract.
Using the guidelines set forth above, and for all of the reasons herein set forth, the court denies plaintiff's motion for summary judgment, and grants defendants’ cross motion for that same relief. The complaint is dismissed.

 There is a small discrepancy between plaintiffs allegation of what it received and that claimed by defendant. This is because of a small New Jersey tax, which plaintiff did not credit since plaintiff is not the beneficiary, but which defendant claims, since it paid this money. The difference does not affect the court’s reasoning or its decision.